PRICE v. HOPKIN.

---

### Caroline Price v. William Hopkin and Another.

*Limitation laws.*—The Legislature has general power to pass limitation laws, prescribing the time within which parties shall assert their rights by suit; but this power is not so unlimited as to enable it, under the form of a limitation law, to take away all remedy.

*Retrospective laws — when invalid.*—A legislative act, retrospective in its operation, and cutting off all remedy for the lapse of time occurring before it became a law, would violate the constitutional provision against depriving a person of property without due process of law, and, therefore, could not be sustained.

*Statute does not affect rights until operative as a law.*—A statute passed to take effect at a future day is to be understood as speaking from the time it goes into operation, and not from the time of its passage. The intervening period is allowed to enable the public to become acquainted with its provisions; but until it becomes operative as a law, they are not compelled to govern their actions by it.

Where, therefore, by the law, as it stood on the 31st day of December, 1863, a person had sixteen years in which to bring suit for the recovery of a parcel of land claimed by her, and Act No. 227 of 1863, (*Laws of 1863, p.* 388,) if applied to the case, would have the effect, the moment it became operative, to cut off all remedy, it was *held* not to apply to such case.

*Heard May* 2, 3 *and* 4. *Decided May* 13.

PRICE *v.* HOPKIN.

Error to Wayne Circuit.

*Charles Tryon* and *Joseph E. Bigelow,* for plaintiff in error:

In a comprehensive sense, the term *ex post facto* law embraces all retrospective laws, or laws governing or controlling past transactions, whether they are of a civil or criminal nature. — *Sedgwick on Stat. and Const. Law* pp. 499, 500; *Calder v. Bull,* 3 *Dallas,* 386.

Retrospective Laws are not confined to such as are enacted to take effect at a time anterior to their passage, but this term embraces all statutes which, operating only from their passage, affect vested rights and past transactions. Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective. — *The Society &c, v. Wheeler* 2, *Gall.,* 139; *Smith's Com.,* 291; 1 *Kent's Com.,* p. 455; *Dash v. Van Kleeck,* 7 *J. R.,* 477.

An act of the Legislature is not to be construed to operate retrospectively, so as to take away a vested right. *People v. Tibbets,* 4 *Cow.,* 384; *Dash v. Van Kleeck,* 7 *J. R.,* 477.

An *ex post facto* law, in the strict technical sense of the term, is usually understood to apply to criminal cases; yet laws impairing previously acquired civil rights are equally within the reason of that prohibition, and equally to be condemned. — *Opinion of Ch. J. Kent in Dash v. Van Kleeck,* 7 *J. R.,* 505.

Legislative acts creating new exceptions or defenses, or modifying previous remedies, should be so construed as not to affect rights of action which have attached and become vested under the original law, and exist at the time of the repealing statute. — *Sedgwick on Stat. and Const. Law,* 135, 660; *Bedford v. Shilling,* 4 *S. & R.,* 401; *Butler v. Palmer,* 1 *Hill,* 324.

PRICE v. HOPKIN.

If a statute of limitations is retrospective, a reasonable time must be given to commence suits.— *Pritchard v. Spencer*, 2 *Ind.*, 486; *Sedgwick on Stat. and Const. Law*, 659. 660, 690 *and* 691; *Call v. Hagger*, 8 *Mass.*, 429; *Holyoke v. Haskins*, 5 *Pick.*, 201; *Smith v. Morrison*, 22 *Pick.*, 431; *Holcomb v. Tracy*, 2 *Minn.*, 244.

If the statute in question is to have a retrospective operation, then, in all those cases where the time provided in it had already run out when it took effect and became a law, it had the effect to transfer the property from the actual owner, without his consent, to the party in possession, and is in violation of Section 32 of Article VI., of the constitution of the State of Michigan, and void. — *Taylor v. Porter*, 4 *Hill*, 145; *Wynehamer v. The People*, 13 *N. Y.*, 392; *Norman v. Heist*, 5 *Watts & Sergt.*, 171; *Hoke v. Henderson*, 4 *Dev.*, 15; 2 *Kent's Com.*, 13; *Jones v. Perry*, 10 *Yerger*, 59; *Embury v. Conner*, 3 *N. Y.*, 511; *Westervelt v. Gregg*, 12 *N. Y.*, 202; *Greene v. Briggs*, 1 *Curtis*, 311; *Hibbard v. The People*, 4 *Mich.*, 129; *Bowman v. Middleton*, 1 *Bay*, 252; *Marray's Lessees v. Hoboken L. & I. Co.*, 18 *How.*, 276; *Vanzant v. Waddel*, 2 *Yerger*, 260; *State Bank v. Cooper*, 2 *Yerger*, 599; *Bronson v. Kinzie*, 1 *How.*, 311; *McCracken v. Hayward*, 2 *How.*, 608; *Arrowsmith v. Burlingim*, 4 *McLean*, 494; *Reed v. Wright*, 2 *Greene*, 22; *Sedgwick on Stat. and Const. Law*, 537, *et seq.*, *and cases cited*; *Cargill v. Power*, 1 *Mich.*, 369.

*Ward & Palmer*, for defendant in error:

Statutes of limitation are too beneficial in their effects, and are too thoroughly engrafted into the policy of the country, to be rooted out or lightly overturned, and they will be held valid unless the constitutional restriction can be pointed out which they violate. — *Sears v. Cottrell*, 5 *Mich.*, 251; *People v. Gallagher*, 4 *Mich.*, 244.

This statute carefully provides ample time for every person to protect his interests, and is not obnoxious to the charge of being unreasonable or arbitrary in any of its provisions. — *Smith v. Morrison,* 22 *Pick.,* 430; *Holcombe v. Tracy,* 2 *Minn.,* 241; *Pierce v. Tobey,* 5 *Met.,* 169.

That the law is retroactive in its operation, and acts to some extent on vested rights, does not make it invalid. Fanciful objections to such laws have sometimes been urged, on the ground that they might be made to work great injustice and oppression; but the general course of legislation, and the prevailing sense of the people, in nearly every State, have decided otherwise, and overwhelmingly sanctioned and approved them. — 1 *Kent's Com.,* 409; *Satterlee v. Matthewson,* 2 *Pet.,* 380; *Bennett v. Boggs,* 1 *Bald.,* 74; *Evans v. Montgomery,* 4 *Watts & Serg.,* 218; *Griffin v. McKenzie,* 7 *Geo.,* 163; *Hawkins v. Barney's Lessees,* 5 *Pet.,* 457; *Wilson v. Hardesty,* 1 *Md. Ch. Decis.,* 66; *Watson v. Mercer,* 8 *Pet.,* 88; *Beal v. Nason,* 14 *Me.,* 344; *Charles River Bridge v. Warren Bridge,* 11 *Pet.,* 420; *James v. Stull,* 9 *Barb.,* 482; 6 *Iowa,* 106.

In all the States, laws affecting the remedy. to enforce contracts even — such as abolishing imprisonment for debt, exempting personal property to a limited amount, and homesteads of considerable value from levy of execution to enforce the payment of debts, whether contracted before or after the passage of the law — have been enacted, and their validity contested, but always upheld. — *Bronson v. Newberry,* 2 *Doug.,* (*Mich.,*) 38; *Rockwell v. Hubbell's Adm'rs,* 2 *Doug.,* (*Mich.,*) 197; *Morse v. Goold,* 11 *N. Y.,* 281.

The only restriction suggested in the adjudged cases to be imposed upon limitation laws is, that they should not annihilate the remedy on contracts without a reasonable time having been granted to enforce them, it being

admitted that what is such reasonable time is a question for the Legislature and not the Courts to decide. — *Hawkins v. Barney's Lessees*, 5 *Pet.*, 456; *Beal v. Nason*, 14 *Me.*, 444; *Jackson v. Lamphire*, 3 *Pet.*, 280.

COOLEY J.:

The plaintiff in this suit brings ejectment, claiming to recover, as grantee of Mary Robinson, a lot in the city of Detroit, which was conveyed to said Mary Robinson, then the wife of John Robinson, by the Governor and Judges of the Territory of Michigan, by deed bearing date March 18, 1809.    The defendants claimed, under John R. Williams, and introduced evidence tending to show that said Williams had possessed and occupied the premises, adversely to the plaintiff and her grantor for about twenty years before the suit was commenced.  There was other evidence in the case to show that said Mary and John Robinson resided in the Territory of Michigan at the date of said deed to her, but that they removed to Canada soon after, and she continued to reside there for some twelve years after his death, when she removed to Detroit.  Her deed to the plaintiff bears date June 9, 1863.

The defendants offered in evidence a deed from Mary Robinson to John R. Williams, dated June 19, 1816, purporting to be executed and acknowledged at Detroit, on the day of its date, and to convey with covenants of warranty the premises in question.  John Robinson did not join in this deed, nor is there anything on the face of it to indicate that the grantor is a married woman. The plaintiff objected to the introduction of this deed in evidence, unless it was first shown that the husband was dead, or that the grantor was in some way legally absolved from the marriage relation at the time of its date, but the Court overruled the objection.

Under the foregoing evidence it was insisted, on behalf of the defendants that Act No. 227 of 1863, (*Laws of*

1863, *p.* 388,) to amend certain sections of the Compiled Laws, touching the limitation of actions relating to real property, was applicable to this case, and had the effect to bar the action.    The Court sustained this position, and the defendants had judgment.

Before the passage of the act of 1863, Mary Robinson was entitled by the existing statutes to bring her action within twenty years from the time when the right accrued, excluding therefrom the period of her residence in Canada.    She seems to have resided in Michigan for about four years only before this suit was commenced. The act of 1863 provides that, after the thirty-first day of December, 1863, "no person shall bring or maintain any action for the recovery of any lands, or the possession thereof, or make any entry thereupon unless such action is commenced, or entry made, within the time herein limited therefor, after the right to make such entry, or to bring such action, shall have first accrued to the plaintiff, or to some person through whom he claims." The time limited for cases like the one before us is fifteen years, and the act makes no exception in favor of parties resident within the British Provinces of North America, though it does in favor of women under coverture. The last section provides that "when any right of action or of entry shall have accrued before the time when these amendments shall take effect as law, the same shall be governed by this chapter as amended: *Provided*, that [no entry shall be made, or action maintained, in any case where such right of action shall already have become barred by any law now or hereafter in force in the territory of the State of Michigan; *and provided further*, that all actions commenced and pending when these amendments shall become a law, shall not be effected thereby, but shall be governed by the law in force, touching the same at the time of the commencement thereof."

This act was passed March 20, 1863, and was ordered

to take effect January 1, 1864, and the construction placed upon it by the Court below made it bar the right of action in the present case the moment it took effect—more than fifteen years having then elapsed since the right of action accrued to Mary Robinson, and since her coverture ceased.

The general purpose of this law was commendable, and it should be sustained so far as can be done consistent with well established rules. The exception in the former statute in favor of residents in the British North American Provinces, was based upon no sufficient reason, and the period allowed in many cases for bringing suits might unquestionably be shortened without detriment to justice. But the question in the present case does not involve the merits of the law, but is simply, whether it is competent for the Legislature to take away an existing right of action, by a statute of limitations which allows no time in which to bring suit after the statute has come into operation.

The general power of the Legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment and where the Legislature has fairly exercised its discretion, no Court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. A statute which forbids any suit for the recovery of lands is not a statute of limitations, but a statute to pass to adverse possessors the title of all other claimants; and its validity can not depend upon the name bestowed upon it. It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought. —

*Piatt v. Vattier*, 1 *McLean*, 158; *Pritchard v. Spencer*, 2 *Ind.*, 486; *State v. Swope*, 7 *Ind.*, 90; *State v. Clark*, 7 *Ind.*, 468; *Holcombe v. Tracy*, 2 *Minn.*, 245; *Ridgley v. Steamboat Reindeer*, 27 *Mo.*, 442; *Call v. Hagger*, 8 *Mass.*, 430; *Holyoke v. Hoskins*, 5 *Pick.*, 26; *West Feliciana R. R. Co., v. Stockett*, 21 *Miss.*, 395; *Briscoe v. Auketell*, 28 *Miss.*, 371; *Central Bank of Georgia v. Soloman*, 20 *Geo.*, 408; and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law.

It is claimed in the present case, that this act does give a reasonable time, inasmuch as its coming into effect is postponed for upwards of nine months from its passage, so that all persons who would be affected by the change in the law would be allowed that period within which to bring suit. It is not claimed that the act has any force as law before the first day of January, 1864, but it is said that it was notice to all persons of the change which was to take place in the law, that they might govern themselves accordingly.

The case of *Smith v. Morrison*, 22 *Pick.*, 430, unquestionably supports this view, which is favored also by *Holcombe v. Tracy*, 2 *Minn.*, 241; but it is difficult to see how any such principle can be applied to the statutes of this State. The constitution provides that "no public act shall take effect, or be in force until the expiration of ninety days from the end of the session at which the same is passed, unless the Legislature shall otherwise direct," &c., (*Art IV.*, §20.) The purpose of this provision undoubtedly was to give the people time and opportunity to learn what changes were to be made in the law before those changes should come into operation, and some countenance is therefore afforded to the position of defendants, that the law becomes notice from its passage,

notwithstanding it has not yet taken effect. But the idea embodied in this constitutional provision is, not that the passage of the law is notice, but that ninety days from the end of the session are required to bring knowledge of the law to the public at large. In other words, as notice of legislation is and must be given by publication in some form, the notice in analogy to other cases of notice by publication, cannot be held complete until the whole period allowed for it has expired. And when the Legislature, for reasons satisfactory to them, decide to postpone the period for the statute to come into operation to a later period, it is to be presumed, nothing appearing to the contrary, that in the particular case it was deemed important that more time be allowed for citizens to ascertain the proposed changes, and to become acquainted with their bearings. The time thus allowed is the reasonable time fixed by the Legislature to bring knowledge of the law home to parties interested, before they are required to govern their actions by it.

That more time is essential for this purpose in some cases than in others is manifest. The legislative proceedings, in one case, may have attracted public attention and discussion, so that the passage of the act, as well as its nature and bearings, will be generally known, almost immediately, while in another they are only brought to public notice by the publication of the act at some time afterwards. Many, without public detriment, may be ordered to take effect at once, while the grossest injustice might be done by allowing others to come into operation before they had been published in the statute book, and generally distributed.

To make this act operate as notice from its passage, seems to us to violate the constitutional provision we have quoted. To do that, we must hold that it has at least the effect and force of notice, during a period when the constitution has declared it shall not take effect

or be in force, and when the obvious design and intention was, that it should have no force or effect whatever. And a very slight examination will show that the construction placed upon it by defendants will give it all the force, during this period, that a statute of limitations ever possesses; for the office of such a statute is simply to fix a time within which parties shall assert their rights or be barred. If, therefore, the defendants are correct in their positions, this statute was not only performing this office before it took effect, but, as to the case before us, it had had its full effect before it came in force.

We do not regard the rule laid down in *Smith v. Morrison*, 22 *Pick.*, 430, as consistent with the rule heretofore adopted in this State. It was held in *Rice v. Ruddiman*, 10 *Mich.*, 125, that a statute must be understood as beginning to speak the moment it takes effect, and not before; and this decision is in harmony with that in *Charles v. Lamberson*, 1 *Clark*, (*Iowa*) 442, where a statute for the protection of homesteads, which made them liable for all debts contracted *prior to its passage*, was held to mean, *prior to its taking effect*, although that period was some time after its enactment. In *Cargill v. Power*, 1 *Mich.*, 369, the question arose as to the period of redemption allowed on a mortgage, executed in January, 1847, while the statute of 1844 was still in force, allowing two years' redemption after foreclosure, under the power of sale. By the Revised Statutes of 1846, which had been adopted May 18, 1846, to take effect from and after the first day of March, 1847, the period allowed for redemption was reduced to one year; and it was insisted, as the mortgage was executed after the passage of the Revised Statutes, but before they took effect, that the intention of the parties was, that the proceedings, under the power to sell, should be regulated, and their rights governed by the Revised Statutes.

That case was certainly a strong one for the applica-

tion of such a doctrine, if it could be applied in any case; for eight months had already elapsed since the passage of the statutes, and the parties, if they were to take any notice of them, would be thereby apprised that no proceedings could possibly be taken under the mortgage, resulting in a sale, before the new law was to take effect. But the Court say that "no statute has, *ex proprio vigore*, any force until it becomes the law of the land. All persons are bound to know, and are supposed to know, what the law is; and as it is that which is to govern the conduct and actions of men, their contracts, it is to be presumed, are made in reference to it, unless the contrary is expressly shown."

If the period between the passage and the taking effect of the statute can be regarded as time allowed by the statute for bringing suit, then in any case where, by a prospective statute, a time is limited for that purpose, the time should begin to run at the time when the statute is passed and not when it takes effect. But the Court hold that the intervening time is not to be counted as a part of the time limited. — *Piatt v. Vattier*, 1 *McLean*, 157.

The naked case here presented, then, is this: By the law in force to the close of the year 1863, Mary Robinson, or her grantee, was allowed sixteen years within which to bring suit for the recovery of this land; at that instant a statute took effect, which provided that all remedy whatever for its recovery was thereby barred. Whether passed at that moment or before, we conceive to be immaterial, and that the statute cannot be applied to this case without violating a plain principle of constitutional law.

The other question which is presented by the record, whether the deed from Mary Robinson to John R. Williams was properly received in evidence, was passed over by counsel without argument. The deed was certainly a

proper instrument of evidence, if the defendants proposed to follow it with such other evidence as would establish its validity. They had a right to show that John Robinson was dead or divorced, and that the right of Mary Robinson to convey as a *feme sole* had thereby become unquestionable. The plaintiff, assuming that her grantor was the identical Mary Robinson, who executed the deed to Williams, regards that deed as void for the supposed existing coverture. The precise question which this objection would raise, on the plaintiff's theory of the facts, is, Whether a deed executed by a married woman within the territory of Michigan, as if she were a *feme sole*, in the year 1816, after her husband and herself had left the territory, without the intention of returning to reside therein, was valid under the then existing laws, or can be avoided by her or her grantee, after the death of her husband? This is a grave question; and as the decision upon the present record does not turn upon it, we do not think it proper to express an opinion without having heard an argument.

The judgment of the Court below must be reversed, and a new trial ordered.

Christiancy and Campbell JJ. concurred.

Martin Ch. J. dissented.