# GWIN *v.* BROWN.

---

CODE, EFFECT OF, ON PENDING ACTIONS; LIMITATION OF ACTIONS; DIS-
ABILITIES, REMOVAL OF; ADVERSE POSSESSION; UNKNOWN HEIRS,
ETC.; REPEAL BY IMPLICATION; INJUNCTION; EJECTMENT.

1. The adoption of the Code of this District did not divest the plaintiff
   in a then pending action of ejectment, of the right to prosecute
   and take the benefit of his action; *construing* Sec. 1638, Code
   D. C.

2. The provisos of the act of Congress of March 3, 1899 (now Sec. 111,
   Code D. C.) for the perfection of titles to land acquired by ad-
   verse possession, which save to a party under disability his
   rights for two years after its removal, provided the entire period
   such rights are preserved shall not exceed twenty-two years from
   the time they accrued, apply as well to known as to unknown
   heirs, devisees and alienees; and, as to all cases which come
   within the operation of that act, repealed Sec. 2 of the act of 21
   James I, Ch. 16, giving a party under disability ten years after
   its removal to assert his right.

3. Sec. 1265, 'Code D. C., limiting the period within which an action
   can be brought to recover land to fifteen years to all except those
   under disability who are given five years after removal of dis-
   ability, within which to bring such an action, repeals Secs. 1 and 2
   of the statute of limitations of 21 James I, Ch. 16, which fixed
   the period of limitation to twenty years and gave a person under
   disability ten years after its removal the right to sue, being in-
   consistent therewith; *construing* also Sec. 1640, Code D. C.

4. There being an apparent conflict between Sec. 111 and Sec. 1265,
   Code D. C., as to the extent of the principal limitation of actions
   and also as to the extent of the saving to parties under disability,
   in order to give effect to both sections, Sec. 111, being a re-
   enactment of the act of Congress of March 3, 1899, for the per-
   fection in equity of titles to land acquired by adverse posses-
   sion, must be read as an exception to the more general provision
   contained in Sec. 1265 limiting the period within which actions
   can be brought to recover land.

5. A new statute of limitations must allow a reasonable time after it
   takes effect for the commencement of suits upon existing causes

of action, although what shall be a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.

6. Where the provision of a new statute of limitations which saves to a party under disability his rights for two years after its removal, repeals the provisions of an old statute giving such a party ten years after the removal of his disability within which to assert his right; and an action of ejectment is brought by one formerly under the disability of infancy, nearly two years before the expiration of the ten years allowed by the latter statute and within less than two years after the repeal of its saving clause by the former statute, it is a question of law to be determined in the action of ejectment whether the action was brought within a reasonable time after the repeal of the saving clause of old statute.

7. Where it is a question of law growing out of the repeal of an old statute of limitations by a new one, whether an action of ejectment was brought within a reasonable time after the removal of the plaintiff's former disability of infancy, a court of equity in a suit brought under the act of Congress of March 3, 1899 (now Sec. 111, Code D. C.) for the perfection in equity of titles acquired by adverse possession, will not enjoin the prosecution of such action and itself determine the question and so deprive the plaintiff therein of the right to trial by jury to which he is entitled, but will retain such a bill to await the result of the trial of the action of ejectment; the bill to be dismissed if the plaintiff in that action shall prevail, while if the defendant shall prevail he will be entitled as complainant in the equity suit to a decree declaring the title to be in him by adverse possession.

No. 1242.  Submitted December 3, 1902.  Decided March 3, 1903.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to enjoin the prosecution of an action of ejectment and have the title to certain land declared to be in them by adverse possession.                    *Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the Supreme Court of the District of Columbia taken from a decree dismissing the bill filed by

the complainants, the present appellants, against the appellee and others.

It appears that on February 13, 1901, the appellee, Augustus Brown, instituted an action of ejectment in the Supreme Court of the District of Columbia against one William Gwin, to recover possession of a certain lot or parcel of ground situate in the city of Washington, known as lot No. 52, in Ann S. Parker's subdivision of lots in square No. 140. That said action of ejectment was at issue and stood on the calendar awaiting its turn for trial, when the said Gwin, the defendant, died intestate. Whereupon the widow of the said deceased defendant, and his heirs-at-law were made parties defendants, and the case still stands on the calendar awaiting trial. In that condition of the case, the said widow and the heirs-at-law of the said original defendant exhibited their bill in equity in the Supreme Court of this District, on the 9th day of April, 1902, against the appellee, the plaintiff in the action of ejectment, and against what is styled the unknown heirs, alienees, and devisees, of Augustus Brown, deceased, the father of the plaintiff in the action of ejectment; but without any allegation that there were any such unknown heirs, alienees, or devisees, in fact. On the contrary, they allege that, so far as they knew or could ascertain, the said Augustus Brown died intestate, and that there is no record of his having made a will or deed of the lot in controversy. That the complainants have made diligent search to find heirs, alienees, or devisees of said Augustus Brown, deceased, but they have been unable to ascertain the name or names of any party or parties other than the said Augustus Brown, the plaintiff in the action of ejectment, and who claims and pretends to be the sole descendant and heir-at-law of the said Augustus Brown, deceased.

The complainants allege that the said William Gwin, the original defendant in the action of ejectment, died in the city of Washington, intestate, on the 24th day of November, 1901, seized in his own right, and in possession of, the lot or parcel of ground in controversy, and was entitled thereto in fee simple, having acquired the same by adverse

possession; and the said William Gwin left surviving him his widow, Martha Gwin, and Mabel Marshall and Helen M. Gwin, his only children and heirs-at-law.

It is also alleged, that on the 2d day of December, 1870, Augustus Brown, since deceased, the father of the plaintiff in the action of ejectment, being then seized and possessed of the lot here in controversy, by deed of trust of that date conveyed said lot or piece of ground to Samuel Parker, trustee, to secure the payment of a certain promissory note; that thereafter, in May, 1871, the said Brown died intestate, in the city of Washington, leaving a widow, Julia Brown, but no issue then *in esse.* That when the said note became due which the said deed of trust was made to secure, the said Julia Brown, the widow, having no means with which to pay off and discharge said debt, sold the said lot or parcel of ground now in controversy, to the said William Gwin, for the amount of the debt, and $500 in addition, and the said Julia Brown thereupon made and executed a deed to the said Gwin for the lot or piece of ground on April 1, 1872; that by virtue of the said sale and conveyance the said Gwin entered into the possession of the said lot and premises, as owner thereof, on the said 1st day of April, 1872; and in February, 1878, he began to improve the same by the erection of a costly building thereon. That said Gwin continued to live in said dwelling-house so erected, up to the time of his death, and complainants have continued to reside therein up to the present time.

It is further alleged, that subsequent to the death of said Augustus Brown, and the sale of the said lot and premises to the said William Gwin, but a few months before the execution and delivery of the said deed by Julia Brown for the said lot, the defendant Augustus Brown was born, on or about the 25th day of December, 1871, and he was on or about the 13th day of February, 1901, when the action of ejectment was instituted, 29 years of age, and was at the time of instituting such action over 22 years of age, and had attained such last-mentioned age more than seven years

then past, and is at the time of filing the bill 30 years of age.

It is further alleged that said William Gwin and the complainants since his death, have been in the uninterrupted possession of the property in controversy for a period of more than twenty-five years, claiming the same adversely to said Augustus Brown, the defendant herein, and the said Julia Brown, and the heirs, alienees, and devisees, of the said Augustus and Julia Brown, deceased; and that said possession has been open, continuous, exclusive, and adverse to said defendants for more than twenty-five years, and for a period of more than five years after said Augustus Brown became of full age; and had been open, notorious, continuous, exclusive and adverse to said defendants for a period of more than twenty-five years next prior to the time of the institution of the said action of ejectment; and at the time of the institution of the said action, the plaintiff therein and defendant in this cause had been for more than two years of full age, and the complainants had acquired by adverse possession a fee-simple title in and to said lot and premises. That they are the owners of said property, by virtue of the adverse possession as aforesaid; but on account of the cloud cast upon the title of the said property, and especially because of the institution of the said action of ejectment, their title is clouded, and their fee-simple title, although existing in fact, is not a title of record, and they are desirous of having the same made perfect and the cloud therefrom removed; and they are advised that they have no adequate remedy at law, and unless said action at law be restrained they will suffer irreparable injury; and they are therefore, by showing title by adverse possession, entitled to a decree declaring their title to be perfect by adverse possession, and to an injunction restraining all persons claiming adversely thereto. They therefore pray for process and for order of publication against the parties made defendants; for an injunction to restrain the action of ejectment, and for a decree declaring their title to the property by adverse possession.

The defendant, Augustus Brown, the only person served

with process, appeared and answered the bill.  By his answer he admits many of the facts alleged in the bill, but he denies that there were any unknown heirs, alienees or devisees of his father, Augustus Brown, deceased, and he avers that he was and is the only and sole heir-at-law of his father.  He admits the death of William Gwin, intestate, as stated in the bill, and that the complainants are the widow and heirs-at-law of said Gwin as alleged; but he denies that the said William Gwin was ever seized in his own right of a good fee-simple title, by adverse possession, to the property in controversy.  He avers that at the time the agreement for the purchase of the said lot was made by William Gwin, with the defendant's mother, Julia Brown, the defendant was then about three and a half months old; and that said Gwin well knew that he was the lawful heir of the said Augustus Brown, deceased, at the time of the said purchase.  He also denies that said Gwin took possession of the lot of ground at the time stated in the bill, and avers that such possession began at a much later date.  He also denies that he, the defendant, ever acquiesced in the possession of said Gwin, prior to the bringing of his said action of ejectment; but he states that he was absolutely without knowledge of the alleged sale of the lot by his mother to the said Gwin, until about two months prior to the bringing of said action of ejectment. The defendant also denies that said William Gwin and those claiming under him, have been in possession of the lot and premises for a period of twenty-five years prior to February 13, 1901; and he also denies the right of the complainants to file the bill to remove the alleged cloud from the title to the property, and he claims the same benefit from the objection thus taken as though he had demurred to said bill.

There was no replication filed, nor was there any testimony taken; but there was a stipulation entered into, whereby it was agreed that the complainants, and those under whom they claim, had been in possession of the property in controversy for a period of twenty-three years next prior to the institution of the action of ejectment by the appellee, and that said possession was adverse to said appellee; and that the

cause should be heard on bill, answer, and stipulation. And the court below, upon hearing the case, passed a decree dis-missing the bill, and the complainants have appealed.

*Mr. Mason N. Richardson* and *Mr. James A. Cobb* for the appellants:

1. The appellants being in possession at the time of suit filed, and having been for more than twenty-two years in continuous possession, adverse to the appellee, no doubt could have been entertained as to the right of appellants to main-tain their present bill, had no action at law pending, and, under the stipulation, to secure the relief prayed. In such proceeding they would have been entitled to a decree restraining the appellee in the assertion of any and all claim against the property described by suit in ejectment or other-wise. This right is expressly conferred by the statute (act March 3, 1899, and code of laws for the District of Colum-bia, Sec. 111). Even in the absence of such express statu-tory right there could be no doubt of the jurisdiction of the court, because adverse possession constitutes as good title as any, and because it is not of record, equity will give relief. *Sharon* v. *Tucker,* 144 U. S. 535; *Holland* v. *Challen,* 110 U. S. 15; *Wehman* v. *Conklin,* 115 U. S. 314. The juris-diction so expressly conferred by the statute upon the equity court, is for the purpose not of creating title, but for the pur-pose of making clear of record, that which already exists as an absolutely vested title. The equity court is the only forum open to appellants for that purpose. In this forum, and under this statute his rights had become vested, because the statute not only confers jurisdiction, so to establish such vested title, but, by it, the common-law rule as to limitations in real actions (Stat. 21 James I.) is restricted and limited so that the rights of claimants to the title shall not, in any case, be preserved for a period greater than twenty-two years, the statute declaring: "That the rights of infants and others under legal disabilities shall be saved for a period of two years after the removal of their disabilities: provided, how-

ever, that the entire period during which said rights shall be preserved shall not exceed twenty-two years from the time such rights accrued either in said complainant or in the person or persons under whom he claims." This statute took effect from its passage (act March 3, 1899). *Mathews* v. *Zane,* 7 Wheat. (U. S.) 164; *People* v. *Clark,* 1 Cal. 406; *Dowling* v. *Smith,* 9 Md. 242. As the appellee's suit in ejectment was not filed until February 13, 1901, by the provisions of this act, his rights in respect to this property became forever barred, and the appellants became and were vested with an absolute title by adverse possession.

2. Notwithstanding the express statutory rights conferred and the limitations fixed in such proceeding upon the rights of adverse claimants, under which interests have vested in appellants, from the mere pendency of the suit at law subsequently brought the rights of the appellants to maintain their bill have been questioned on the ground that a court of concurrent power having first acquired jurisdiction of the cause, the rights of the parties must be therein determined. *While it is true that this doctrine has been successfully applied in cases where vested rights may be as well protected at law as in equity, yet it has never been so held, where the rights and remedies of the parties in these different forums are not correlative and concurrent.* The statute applicable in the suit at law in ejectment is the statute of 21 James I, under which the rights of the appellee are preserved until he shall have reached his thirtieth year, and he was but 29 years old when that suit was begun. And to suffer the application in an action at law of the limitations of the statute 21 James I, will be to divest vested rights, and reinvest rights that have become barred, under the act of March 3, 1899, under which appellants have filed their bill, and under which they have in equity the right to avail themselves of the statutory period therein fixed. It is never true that equity will suffer a wrong to be done, or that it will divest itself of jurisdiction in a case where, like the present, under a statute in direct modification of common-law jurisdiction and prior to suit brought, rights have absolutely

vested in the one party, and any supposed rights of the other have been terminated, by the positive limitations of the statute, and where the rights thus conferred and the limitations therein established can be invoked only in a proceeding in equity. In such case jurisdiction is not concurrent, it is not correlative. The rights of the parties cannot be properly adjudicated at law, for the appellants have equitable rights, which cannot be enforced in a legal tribunal, and of which they would be divested if such proceeding is suffered to continue. Equity will always entertain jurisdiction where full, complete, and adequate remedy cannot be had at law. This is so even where jurisdiction has not been expressly conferred. *Campbell* v. *Holt,* 115 U. S. 620; *Leffingwell* v. *Warren,* 2 Black (U. S.), 559; *Watson* v. *Sutherland,* 5 Wall. (U. S.) 75; *Moran* v. *Palmer,* 13 Mich. 369; *Broiestedt* v. *Railroad Co.,* 55 N. Y. 220.

Where there is a conflict of laws the statute last enacted will be enforced. That it was the intention of the lawmakers to modify and reduce the limitations of the statute 21 James I, is apparent from the fact when they came to consider the application of the statute in suits for ejectment they provide that the rights of minors shall be preserved five years after coming of age, and no more (code, D. C., Sec. 1265). This section, however, simply shows the intention of the legislature, and cannot be of avail to the appellants in said ejectment suit, because said suit was pending March 3, 1901. Secs. 1638 and 1642, code; D. C. It is submitted that the decree of June 18, 1902, should be reversed and the cause remanded with directions to enter a decree in said cause vesting the title to the lands claimed, in the appellants.

*Mr. B. F. Leighton* and *Mr. L. Melendez King* for the appellees:

1. Did the act of Congress of March 3, 1899, entitled "An act to quiet land titles in the District of Columbia," repeal or alter the statute of limitations in force in said

District on February 13, 1901? When the ejectment suit was brought, which is sought to be restrained by appellants' bill, the statute of limitations in force, applicable to that case, was the statute of 21 James I, chapter 16, sections 1 and 2. The compiled statutes, p. 358, Chap. 42, Secs. 1 and 2; *Keefe* v. *Bramhall,* 3 Mackey, 568; *Sis* v. *Boarman,* 11 App. D. C. 121; *Cropley* v. *Eyster,* 9 App. D. C. 378; *Davis* v. *Coblens,* 12 App. D. C. 59. Before the passing of the act of March 3, 1899, by the decision of the courts of this forum, title to real estate by adverse possession was as good as any other title — it vested the adversary holder with an indefeasible title; the statute not only barred the remedy of the party out of possession, against whom such adversary title had ripened, but took away his right. *Campbell* v. *Holt,* 115 U. S. 623. The statute is not a statute of limitations; it does not purport to be; it contains no word of repeal of the statute of limitations then in force. On the contrary, it expressly refers a party who would avail himself of its benefits to the statute of limitations then in force, as measuring his right to be heard and of the court to take jurisdiction of the case. That such is the proper construction of the statute is apparent by recurrence to the code of the District of Columbia, by section 111 of which the statute under consideration is re-enacted, almost *in hæc verba,* while the statute of limitations, as provided thereby, reduces the period of limitations for the recovery of lands, tenements, or hereditaments to fifteen years from the time the right to maintain actions for the same shall have accrued; and provides that where a party is under the disability of infancy, he shall have five years after such disability is removed within which to bring suit. Sec. 1265. Appellants argue that the statute of March 3, 1899, works a repeal, *pro tanto,* to the statute of limitations. To work such a result, the repugnancy of the act under discussion to the statute of limitations must be of such a character that the two provisions cannot stand together. *Chicago Ry. Co.* v. *United States,* 127 U. S. 409; *Red Rock* v. *Henry,* 106 U. S. 601; *McCool* v. *Smith,* 1 Black (U. S.), 459; *United States* v. *Tanner,* 11

Wall. (U. S.) 88; *Wood* v. *United States,* 16 Pet. (U. S.) 342; *Henderson's Tobacco,* 11 Wall. (U. S.) 652; *King* v. *Connell,* 106 U. S. 395; *Murdock* v. *City of Memphis,* 20 Wall. (U. S.) 590.

2. The appellants, in order to maintain their bill, must show that they have a good title to the property in controversy, by adverse possession. Such a title is a complete defense to the suit in ejectment, which is sought to be restrained. *Hogan* v. *Kurtz,* 94 U. S. 775; Sec. 809, R. S. D. C. This statute placed judgments in ejectment upon the same footing as other judgments. *Hogan* v. *Kurtz, supra; Barrows* v. *Kindred,* 4 Wall. (U. S.) 399; *Merryman* v. *Bourne,* 9 Wall. (U. S.) 599. The very purpose sought to be accomplished by appellants' bill will be obtained by a judgment of the court in their favor, in the ejectment case. Where title is being tried by an action of ejectment in a court of common-law jurisdiction, the suit will not be enjoined. Interference in such case would be repugnant to the clearly established principle, that where different courts have concurrent jurisdiction, the right to determine the controversy belongs to the court to which resort is first had. Statements of the pretended claim of title, or the fact that it is barred by the statute of limitations, constitute no sufficient grounds for restraining proceedings in ejectment. High on Injunctions, Sec. 96; *Stockton* v. *Williams,* 1 Doug. (Mich.) 558; *De Groot* v. *Receivers of the Washington Bank,* 3 N. J. Eq. 198; *Pullman Palace Car Co.* v. *Central Transportation Co.,* 24 Fed. Rep. 357; *Bernard* v. *German-American Seminary,* 39 Mich. 455; *Tuxtor* v. *Shipley,* 77 Md. 474; *Honer* v. *Jobs,* 13 N. J. Eq. 19; *Claudian* v. *McGee,* 20 Tex. 481.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill was filed under the act of Congress of March 3, 1899, entitled "An act to quiet land titles in the District of Columbia." The act has been subsequently incorporated

into the code of this District and re-enacted as part thereof, and forms section 111 of the code. The code was enacted or adopted by act of Congress of March 3, 1901, but did not take effect or go into operation until January 1, 1902. The action of ejectment, referred to in the pleadings recited, was instituted February 13, 1901, after the passage of the act of Congress for quieting titles in this District, and before the adoption of the code — but the subsequent adoption of the code did not divest the plaintiff in the action of ejectment of the right to prosecute and take benefit of his pending action of ejectment. For while the code repealed all acts of Congress incorporated therein, it expressly provided ". that such repeal shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before such repeal, but all rights and liabilities under the statutes or parts thereof so repealed shall continue and may be enforced in the same manner as if such repeal had not been made: *Provided,* that the provisions of this code relating to procedure or practice, and not affecting the substantial rights of parties, shall apply to pending suits or proceedings, civil or criminal." Code, Sec. 1638.

The act of Congress to quiet titles to land in this District, and which has been incorporated in the code as section 111, provides as follows:

" When title to any real estate in the District of Columbia shall have *become vested* in any person or persons by *adverse possession,* the holder thereof may file a bill in the Supreme Court of the District of Columbia to have *such title perfected,* in which bill it shall be sufficient to allege that the complainant holds the title to such real estate, and that the same has vested in him, or in himself and in those under whom he claims, *by adverse possession;* and in such action it shall not be necessary to make any person a party defendant except such persons *as may appear* to have a claim or title adverse to that of the plaintiff. Upon the trial of such cause, proof of the facts showing title in the plaintiff by adverse possession shall entitle him to a decree of the court declaring his

title by adverse possession, and a copy of such decree may be entered of record in the office of the recorder of deeds for said District. In any such action, if process shall be returned not to be found, notice by publication may be substituted as in case of nonresident defendants. If in any case it shall be unknown whether one who, if living, would be an adverse party is living or dead, or in the case of a decedent, whether he died testate or left heirs, or his heirs or devisees are unknown, the cause may be proceeded with under the provisions of section one hundred and nine; *Provided,* That the rights of infants or others under legal disability shall be saved for a period of two years after the removal of their disabilities: *Provided, however,* That the *entire period* during which such rights shall be preserved shall not exceed *twenty-two years from the time such rights accrued,* either in said claimant or in the person or persons under whom he claims."

At the time this act of Congress was passed, March 3, 1899, the old British statute of limitations of actions of 21 James I, ch. 16, or the first and second sections thereof, formed a part of the statute law of this District, derived through the State of Maryland, by act of Congress of 1801. By section 1 of the act of James I, the limitation to the right of entry or action for the recovery of possession of real estate was fixed at twenty years from the time the right accrued. But by section 2, in the form of a proviso, it was declared that if any person who is or shall be entitled to or hath such right or title of entry, be at the time of the said right or title first descended, accrued, come or fallen, within the age of 21 years, *feme covert, non compos mentis,* etc., that then such person, and his heirs, shall or may, notwithstanding the said twenty years be expired, bring his action or make his entry as he might have done before this act, so that such person, or his heirs, shall within ten years next after his full age, discoverture, coming of sound mind, etc., take benefit of, and sue forth the same, and at no time after said ten years. In other words, the statute gives to a party, to whom a right of entry accrues and who is under a disabil-

ity at the time, ten years after the disability removed, within which to exercise his right of entry or bring his action to recover the land, notwithstanding the twenty years shall have expired after his title first accrued.

The title of Augustus Brown, the father of the appellee, is not in question; both parties to this litigation derived title from him. He died intestate in May, 1871, and he was then in possession of the property now in controversy. He left no issue born at the time of his death, though the plaintiff in the action of ejectment was born a few months after his father's death; that is to say, on or about the 25th day of December, 1871. The property was sold by Julia Brown, the widow, and the deed therefor delivered by her to William Gwin, on or about the 1st of April, 1872; and Gwin then entered into the possession of the property, and he and his widow and children have been in possession ever since.

Augustus Brown, the defendant in this suit and plaintiff in the action of ejectment, was 29 years of age when he instituted the action of ejectment, on the 13th day of February, 1901.

It is proper to notice here, that all the parts and allegations of the bill that relate to unknown heirs, alienees, or devisees of Augustus Brown, deceased, have been abandoned by the complainants, and the case is presented as between the complainants and the appellee Brown; it being manifest, both from the allegations of the bill and the averments of the answer, that there are no unknown heirs, alienees, or devisees of Augustus Brown, deceased, and that the appellee is the sole heir-at-law. Therefore the question is, as to the right and title of the complainants as against the appellee, the sole heir-at-law of Augustus Brown, deceased.

The first question is, whether the act of Congress of March 3, 1899, for the quieting of land titles in this District, looking to its general scope and purpose, has such operation and effect as to repeal or modify the second section of the statute of 21 James I, ch. 16, in cases arising under the act of Congress just referred to? It is contended by the appellee that the restriction in the act of Congress of the saving to

parties under disabilities to two years applies only to un-
known nonresident heirs, alienees, or devisees, and so far
as the known heirs or devisees, who are made parties to the
proceeding, may be concerned, the statute of 21 James I,
still remains in force. But we perceive nothing in the terms
of the act of Congress that would justify such a construc-
tion. To adopt such a construction would be to make one
rule for the absent and unknown parties, and another and a
very different rule for parties who may happen to be known,
whether the absent parties could, by proper diligence and
effort, be discovered or not.

Nor would such a construction consist with that other pro-
vision of the code for the limitation of actions, which de-
clares that " no action shall be brought for the recovery of
lands, tenements, or hereditaments, after fifteen years from
the time the right to maintain such action shall have ac-
crued; * * * *Provided,* That if any person entitled to
maintain any of the actions aforesaid shall be at the time of
the accruing of such right of action under twenty-one years
of age, *non compos mentis,* or imprisoned, such person, or
his proper representatives, shall be at liberty to bring such
action within the respective times in this section limited after
the removal of such disability; except that where any person
entitled to maintain an action for the recovery of lands, tene-
ments, or hereditaments, or upon any instrument under seal,
shall be at the time such right of action shall accrue under
any of the disabilities aforesaid, such person, or his proper
representative, may bring such action within *five years* after
the removal of such disabilities, and not thereafter." Code,
Sec. 1265. It is quite clear that, by the two provisos in the
act of Congress of March 3, 1899, the second section or sav-
ing proviso in the British statute of 21 James I, ch. 16, was
repealed as to all cases coming within the operation of the
act of Congress of 1899 for the quieting of titles; and it is
equally clear that by the subsequent enactment of the section
1265 of the code, the sections 1 and 2 of the statute of James
were repealed, and new periods of limitations substituted
therefor. It is true, the British statute of limitations of

21 James I, is not mentioned or referred to either in the act of Congress or the sections of the code; but by section 1640 of the code it is declared that "nothing in repealing clause therein shall be held to affect the operation or enforcement in this District of the common law or any British statute in force in Maryland on the 27th day of February, 1801, * * * except in so far as the same may be *inconsistent with, or is repealed by, some provision of this code.*"

There is, however, an apparent conflict between section 111 and section 1265 of the code, as to the extent of the principal limitation of actions, and also as to the extent of the saving to parties under disabilities. But, in order to give effect to both sections, the former section being the act of Congress of March 3, 1899, must be read as an exception to the latter more general provision contained in section 1265.

The question then arises, what effect is to be given the act of Congress of March 3, 1899, embodied in the code as section 111, as applied to the facts of this case? If the plaintiff be allowed the benefit of the saving in favor of infancy or minority, contained in the second section of the statute of 21 James I, which was in force and applicable to his case up to the time of its repeal by the act of Congress of March 3, 1899, then by reason of such repeal, and the necessary implication arising thereon he must be allowed a reasonable time within which to bring his action of ejectment after such repeal, and if it appear that the action was brought within such reasonable time after the repeal, then it would seem to be quite clear there could be no perfect or consummate right or title to the property acquired by adverse possession as against the plaintiff in ejectment, within the time allowed for bringing the action. But the question is, whether by the repeal of the saving in the statute of 21 James I, and the adoption of the substituted restriction of time in the saving in the act of Congress, the plaintiff has been deprived of his right of action, as contended by the appellants?

It is undoubtedly within the constitutional power of Congress, legislating for this District, to require, as to existing

causes of action, that suits for their enforcement should be barred unless brought within a period less than that prescribed at the time the cause of action accrued. *Koshkonong* v. *Burton,* 104 U. S. 668, 675, and cases there cited. But all statutes of limitations must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. Therefore a statute could not bar the existing right of a party without affording him such opportunity; and if the legislature should attempt to do so such act would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential therefore that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.

As said by the Supreme Court of the United States, in the case already cited, " The exertion of this power is, of course, subject to the fundamental condition that a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of an action before the bar takes effect." *Koshkonong* v. *Burton, supra;* Cooley, Const. Lim. (6th ed.) 449, 450; *Terry* v. *Anderson,* 95 U. S. 628. See also *Price* v. *Hopkins,* 13 Mich. 318; *Call* v. *Hagger,* 8 Mass. 423, 430; *Society* v. *Wheeler,* 2 Gall, 106; *Hart* v. *Bostwick,* 14 Fla. 162. The question therefore becomes one as to whether the action of ejectment to recover the land was brought within a reasonable time after the repeal of the saving proviso in the statute of 21 James I, in favor of infancy; the action having been brought nearly two years before the expiration of the ten years allowed by the statute of 21 James I, and within less than two years after the repeal of the saving in the statute of James by the act of Congress of March 3, 1899. This is

a question of law, and is necessarily involved in the action of ejectment now pending for trial.

The object of the act of Congress of March 3, 1899, now constituting section 111 of the code, is not to change the law of adverse possession, but to invest the court of equity with power and jurisdiction to make declaratory decrees as to the rights of parties who may show that they have acquired a title by adverse possession, such as may be sufficient in point of law to bar all other claimants of the property, and to direct a copy of such decree to be entered of record in the office of the recorder of deeds for said District. By this means the title is made perfect of record instead of resting *in pais* merely, dependent upon the uncertainties of parol testimony. What constitutes adverse possession is a question of law, admitting of legal definition, and when the facts are ascertained, the question is one for the court to decide.

When an action at law has been instituted to try the question of title to land claimed to have been acquired by adverse possession as against the plaintiff in the action, it was certainly not the purpose of the act of Congress to withdraw the trial of such action at law from the court of law where it is pending, and where it appropriately belongs, and confer the right of trial upon a court of equity. The plaintiff in his action at law is entitled to the benefit of trial by jury, according to the law of the land, and a court of equity never interposes to deprive a party of such benefits of trial, except to restrain vexatious litigation or a multiplicity of suits. But the act of Congress does not contemplate the use of an injunction to restrain the trial at law of a pending action of ejectment, wherein the title by adverse possession may be fully and fairly tried, according to law. There is no such obstacle shown to exist to the assertion and maintenance of the right of the complainants in the property, whatever that right may be, as to justify a court of equity in the use of an injunction to restrain the proceeding at law. The trial at law of the pending action

of ejectment is the proper remedy for the determination of the right involved in the controversy between the parties.

The present case is quite unlike that of *Sharon* v. *Tucker,* 144 U. S. 533, principally relied upon by the appellants. That was a case to establish the title of the complainants as matter of record, to certain property described, and to enjoin the defendants from asserting title thereto, the title to the same having been lost by the adverse possession of the parties through whom the complainants claimed. There was no controversy as to title, and there had been no action at law instituted. The court in its opinion said that the complainants had the legal right to the premises in controversy, and as no parties deriving title from the former owners could contest that title with them, there did not seem to be any just reason why the relief prayed should not be granted. Such relief was among the remedies often administered by a court of equity.

And in conclusion the court said: "The flexibility of decrees of a court of equity will enable it to meet any emergency. Here the embarrassments to the complainants in the use and enjoyment of their property are obvious and insuperable, except by relief through that court. No existing rights of the defendants will be impaired by granting what is prayed, and the rights of the complainants will be placed in a condition to be available. The same principle which leads a court of equity, upon proper proof, to establish by its decree the existence of a lost deed, and thus make it a matter of record, must justify it, upon like proof, to declare by its decree the validity of a title resting in the recollection of witnesses, and thus make the evidence of the title a matter of record."

In this case, while we do not assume to pass upon the question of title to the property in controversy, as between the plaintiff in ejectment and the complainants filing the present bill, we think the bill should be retained, to await the result of the trial of the action of ejectment; and if that result shall be in favor of the complainants, then it will be proper that a declaratory decree be passed in accordance with the pro-

visions of the act of Congress, as embodied in section 111 of
the code; but if the result of the action of ejectment shall be
in favor of the plaintiff in that action, then the bill must
be dismissed.

We shall therefore reverse the decree of the court below
dismissing the bill, and remand the cause that the bill be
retained until the trial of the pending action of ejectment,
and when the final conclusion of that action shall be deter-
mined, such proceeding shall be had as accords with the
foregoing opinion.

*Decree reversed and cause remanded, to be disposed of in
accordance with the foregoing opinion.*