## School Employes' Retirement Fund Contributions

WOODWARD, Deputy Attorney General, May 17, 1940. —We have your request to be advised whether the requirement of section 2 of the Act of June 20, 1939, P. L. 479, 24 PS §571.1, is mandatory or merely directory.

Said section requires that each school employe who makes an election (under the provisions of this section) to contribute to the school employes' retirement fund, either on the basis of the total salary he or she will receive during the effective period of the act, or on the basis of the total salary which he or she received during the year which began July 1, 1938, and ended June 30, 1939, shall notify, in writing, his or her employer on or before September 15, 1939, upon which such salary he or she elects to contribute.

Section 2 of said act provides, inter alia, as follows:

"During the period in which this act is in effect, each employe who is a member of the school employes' retirement system may elect to contribute to the school employes' retirement fund either on the basis of the total salary he or she will receive during the effective period of this act or on the basis of the total salary which he or she received during the year which began July first, one thousand nine hundred thirty-eight and ends June thirtieth, one thousand nine hundred thirty-nine.

"Each employe who makes an election under the provisions of this section shall notify, in writing, his or her employer, on or before September fifteenth, one thousand nine hundred thirty-nine, upon which such salary he or she elects to contribute. Each employer shall thereupon notify the School Employes' Retirement Board, in writing, of the option elected by each such employe." The act further provides (section 1, amending section 532 of the Act of May 18, 1911, P. L. 309):

"For any year, in order to bring the expenditures of the district within the annual estimate of available revenue, each school board in districts of the first class is hereby empowered to make such general adjustments and reductions in salaries fixed by law, including salaries of the professional employes, as in the judgment of the board may be proper and necessary to bring the total of all expenditures within the estimate of revenue to be received . . .".

In section 4 of the act it is further provided:

"This act shall become effective January first, one thousand nine hundred and forty, and shall remain in force and effect only until December thirty-first, one thousand nine hundred and forty-one."

It appears that the bill, as originally drafted, was intended to become effective immediately upon its final enactment. Although the bill as finally passed became effective January 1, 1940, it was approved on June 20,

1939. It should be noted that the date of the exercise of the option was fixed as of September 15, 1939.

This question has arisen as result of the fact that on December 1, 1939, the Philadelphia School District decided to reduce the salaries of its school employes as of January 1, 1940.

The question, therefore, turns on the effect to be given to that portion of section 2 of the Act of 1939 which provides:

"Each employe who makes an election under the provisions of this section shall notify, in writing, his or her employer, *on or before September fifteenth, one thousand nine hundred thirty-nine,* upon which such salary he or she elects to contribute. . . ." (italics supplied).

In determining whether or not the requirements concerning the date of September 15, 1939, set forth in the act, are mandatory, directory, or absolutely void, we must carefully consider what effect shall be given to the words "on or before September fifteenth one thousand nine hundred thirty-nine", in view of the fact that the act did not become effective until January 1, 1940.

Concerning the fixing of the effective date of a statute, in 59 C. J. §673, p. 1137, we find:

"The general rule is that a statute speaks from the time it goes into effect and not otherwise, whether that time be the day of its enactment or some future day to which the power enacting the statute has postponed the time of its taking effect. The fixing of a date either by the statute itself or by constitutional provision, when a statute shall be effective, is equivalent to a legislative declaration that the statute shall have no effect until the date designated; and since a statute not yet in effect cannot be considered by the court, the period of time intervening between its passage and its taking effect is not to be counted; but such a statute must be construed as if passed on the day when it took effect. While a statute may have a potential existence, although it will not go into operation until a future time, until the time arrives when it is

to take effect and be in force, a statute which has been passed by both houses of the legislature and approved by the executive has no force whatever for any purpose. Before that time no rights may be acquired under it and no one is bound to regulate his conduct according to its terms, and all acts purporting to have been done under it prior to that time are void."

This position is sustained by one Pennsylvania case, Thompson v. Clearfield County, 2 D. & C. 619 (1922), where Judge Bell states the law to be (p. 620) :

"A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation and not from the time of its passage. Before that time no rights may be acquired under it; it is equivalent to the legislative declaration that the statute shall have no effect until the designated day . . ."

In the case of Gilbert, etc., v. Ackerman et al., 159 N. Y. 118, 122, 53 N. E. 753 (1899), a case involving limitation of actions, the court said at page 122:

"The doctrine of these cases would seem to be that if an act affords a reasonable opportunity for parties to commence actions between the time of its passage and the time when, by its terms, it is to go into effect, the legislative power has been constitutionally exercised. The doctrine rests, evidently, upon the theory that, as the act has become the law of the state upon its passage, all persons are to be presumed to have notice of its provisions and if the period of time intervening until it becomes effectual is not to be regarded as a saving period for the enforcement of existing causes of action, there is no reason in the provision for its taking effect at a future day. On the other hand, we have the opinion of Judge Cooley, in *Price v. Hopkin* (13 Mich. 318), in support of the proposition that the statute begins to speak the moment it takes effect and not before, and, therefore, that the period of time intervening between its passage and its taking effect is not to be counted. In his work on Constitutional Limitations, (* p. 366), that eminent jurist says

that, 'it is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.' It is true that his opinion, in *Price v. Hopkin,* had some reference to the provisions of the State Constitution; but the decision was not entirely dependent upon that feature. He takes this position that a statute has not, *ex proprio vigore,* any force until it becomes the law of the land, and that is when, by its terms, it takes effect, and as up to that moment the party is allowed by the existing law a period for the commencement of his action, if at the instant that the new statute takes effect the period is cut off, and the remedy forever barred, then the act is unconstitutional. In his language, 'whether passed at that moment or before,' (referring to the time of taking effect), 'we conceive to be immaterial and that the statute cannot be applied . . . without violating a plain principle of constitutional law.'

"I incline to the view that the position taken by the Appellate Division in this action is, on the whole, the preferable one. It establishes a simple and a salutary rule in the enactment of statutes of limitation, which leaves no room for construction and doubt and which harmonizes with the principle that recognizes a statute as speaking the moment it takes effect. That a party is chargeable with knowledge of the passage of a statute, which alters an existing law, whereby his claim may be affected, is undoubtedly true in law; but I do not consider that that is a sufficient, or satisfactory, answer to the proposition that when the legislature makes a new statute of limitations, it should make some provision therein that, after the statute takes effect, parties, whose rights of action are to be affected by the new law, shall have a reasonable period within which to prosecute their claims. It should not be left to supposition and inference from the circumstances."

In 1 Lewis' Sutherland Statutory Construction (2d ed. 1904) §175 (107), it is said:

"The period between the passage of a law and the time of its going into effect is allowed to enable the public to become acquainted with its provisions; but until it becomes a law they are not compelled to govern their actions by it. Thus, an act which was to go into effect at a future day established new periods of time for the limitation of actions. It was held not applicable to a case having several years to run where the act would be a bar the moment it took effect. It could not operate to put the party on diligence before it went into operation."

The effect of all these authorities is that until the act actually becomes operative it is not obligatory with respect to anyone covered by its provisions.

We may assume that it was the intent of the legislature that the school employes should have sufficient time for giving notice of their election after the passage of the act on June 20, 1939.

Since the Philadelphia school employes could not have known on or before September 15, 1939, that the board would decide on December 1, 1939, to reduce their salaries as of January 1, 1940, it is obvious that such employes had no opportunity to avail themselves of the benefits of their right to elect under the act.

As the act did not become effective until January 1, 1940, the requirement of section 2 that the school employe should given written notice of his election on or before September 15, 1939, could have no force nor effect, and this section must be read as though "on or before September 15, 1939", were not written in the act.

However, as the evident intent of the act was to afford the "employe" a certain period of time within which he might make an election, that is, on or before September 15, 1939, a reasonable time after the effective date of the act should be given such employe to make his election.

We are of the opinion, therefore, and you are accordingly advised that the provision of section 2 of the Act of June 20, 1939, P. L. 479, 24 PS §571, which requires each school employe who makes an election under the act

to give written notice thereof to the employer on or before September 15, 1939, is neither mandatory nor directory, but is absolutely void. Therefore, a reasonable time after the effective date of the act should be given to such employe for giving notice of his election.