CORRIGAN, J.
This wrongful death case requires us to consider whether the common-law “discovery rule,” which allows tolling of the statutory period of limitations when a plaintiff could not have reasonably discovered the elements of a cause of action within the limitations period, can operate to toll the period of limitations, or whether MCL 600.5827, which has no such provision, alone governs the time of accrual of the plaintiffs claims. We conclude that MCL 600.5827 alone controls. Because the Court of Appeals held to the contrary, we reverse its judgment and remand the case to the Genesee Circuit Court for further proceedings consistent with this opinion.
I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE
This case arises from the tragic rape and murder of Margarette F. Eby in November 1986 at her home in Flint. According to plaintiffs complaint, in 1981 Eby leased a residence in the gatehouse on the grounds of *383 the Mott family estate from Ruth R. Mott (Mott) where Eby began to live. Eby was found raped and murdered on November 9, 1986, after last being seen alive on November 7, 1986. The rape and murder remained unsolved until 2002, when deoxyribonucleic acid (DNA) evidence established that Jeffrey Gorton, an employee of his parents’ corporation, the Buckler Automatic Lawn Sprinkler Company (Buckler), which serviced the sprinkler system on the grounds, had committed the crime. Gorton pleaded no contest when charged with the murder and was sentenced to life imprisonment for Eby’s rape-murder.
On August 2, 2002, plaintiff Dayle Trentadue, Eby’s daughter and the personal representative of her estate, filed a complaint against Jeffrey Gorton; his parents Shirley and Lawrence Gorton who, as noted, operated Buckler; Buckler; Carl E Bekofske, personal representative of the estate of Ruth R. Mott, deceased, who died in 1999; MFO Management Company (MFO), the management company that provided administrative services to the Mott family; and two of Mott’s employees, Victor Nyberg and Todd Bakos, asserting several theories of negligence. Regarding the Gortons, the contentions were essentially negligent hiring and monitoring of Jeffrey Gorton. The other defendants were allegedly negligent in allowing access to the area that led to Eby’s residence and not providing adequate security or alarms.
Each defendant, except Jeffrey Gorton, moved for summary disposition under MCR 2.116(C)(7), arguing, among other things, that plaintiffs action was barred by the three-year statute of limitations for wrongful death actions.[1] In particular, they argued that under *384 MCL 600.5827[2] a claim accrues when the plaintiff is harmed,[3] and the action for wrongful death must be commenced within three years after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims. MCL 600.5805(1); MCL 600.5805(10). Further, while MCL 600.5852 permits an extension of up to three years based on when a personal representative is appointed, that statute was inapplicable here because almost 16 years had passed. Thus, defendants asserted that the suit should have been dismissed as untimely and barred under the statute of limitations. Plaintiff in response asserted that the common-law discovery rule applied to toll the period of limitations. That is, even though the provisions of the period of limitations were silent on tolling based on discovery, until she knew the identity of the killer, the period of limitations was tolled.[4]
*385 The Genesee Circuit Court ruled for plaintiff, adopting her theory that the common-law discovery rule remains viable in Michigan and thus applicable here. The court concluded regarding defendants Buckler and Shirley and Lawrence Gorton that “[a] claim for personal injury accrues when all of the elements are present and can be properly pleaded in a complaint,” citing, e.g., Connelly v Paul Ruddy’s Equip Repair & Service Co, 388 Mich 146; 200 NW2d 70 (1972). Trentadue v Buckler Automatic Lawn Sprinkler Co, opinion of the Genesee Circuit Court, issued October 28, 2003 (Docket No. 02.74145-NZ), p 4. The court also “recognize[d], in some instances, [that the] identity of the killer may be necessary to plead a cause of action.” Id. Accordingly, it decided that most of plaintiff’s claims were not time-barred because plaintiff could not determine that the duties were breached, or that the breaches caused the injuries, until she became aware of the killer’s identity in 2002. Regarding Bekofske and MFO, the court granted their summary disposition motions on the basis that if Mott and MFO had failed to provide adequate security, this claim was known to plaintiff at the time of the killing, and the cause of action could have been brought at that time.[5]
On appeal, the Court of Appeals affirmed in part, reversed in part, and remanded, concluding that the common-law discovery rule tolled the limitations period for all plaintiff’s claims, including the improper security claims against Bekofske and MFO. 266 Mich App 297; 701 NW2d 756 (2005). The Court of Appeals concluded that the common-law discovery rule tolled the period of limitations because plaintiff was unaware of a cause of action against Buckler, the Gortons, Nyberg, or Bakos until then-relationship with the killer became known. Regarding Bekofske and MFO, the Court of Appeals reversed the part of the trial court’s judgment that granted summary *386 disposition in their favor. It concluded that the discovery rule applied because until the identity of the killer became known, no causal connection could be discovered between a breach .of duty and Eby’s death. The Court of Appeals failed to address the absence of the common-law discovery provision in MCL 600.5827. It evidently presumed that the discovery provision could co-exist with the statute and was not abrogated by the statute’s enactment.
Buckler, the Gortons, and MFO sought leave to appeal in this Court. We granted leave to appeal to consider whether a common-law discovery rule continues to exist in Michigan or whether MCL 600.5827, which has no common-law discovery provision, is the exclusive means of establishing tolling.[6]
II. STANDARD OF REVIEW
This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo. Grimes v Dep’t of Transportation, 475 Mich 72, 76; 715 NW2d 275 (2006). In the absence of disputed facts, we also review de novo whether a cause of action is barred by the applicable statute of limitations. Joliet v Pitoniak, 475 Mich 30, 35; 715 NW2d 60 (2006). Finally, we address questions of statutory interpretation de novo. Grimes, supra at 76.
III. ANALYSIS
A. THE STATUTE OF LIMITATIONS AND ITS EFFECT ON THE COMMON-LAW DISCOVERY RULE
The applicable statute of limitations in a wrongful death case is MCL 600.5805(10),[7] which states: “The period of limitations is 3 years after the time of the *387 death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.” Thus, the period of limitations runs three years from “the death or injury.”
Moreover, MCL 600.5827 defines the time of accrual for actions subject to the limitations period in MCL 600.5805(10).[8] It provides:
*388 Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, arid in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.
This is consistent with MCL 600.5805(10) because it indicates that the claim accrues “at the time the wrong upon which the claim is based was done ....” We have, not surprisingly given its clarity, so held in Boyle v Gen Motors Corp, 468 Mich 226, 231-232; 661 NW2d 557 (2003), and Garg v Macomb Co Community Mental Health Services, 472 Mich 263, 282; 696 NW2d 646 (2005). We have also clearly established that “[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted.” Boyle, supra at 231 n 5.
The Revised Judicature Act, at MCL 600.5838(2), 600.5838a(2), 600.5839(1), and 600.5855, provides for tolling of the period of limitations in certain specified situations. These are actions alleging professional malpractice, MCL 600.5838(2); actions alleging medical malpractice, MCL 600.5838a(2); actions brought against certain defendants alleging injuries from unsafe property, MCL 600.5839(1); and actions alleging that a person who may be liable for the claim fraudulently concealed the existence of the claim or the identity of any person who is liable for the claim, MCL 600.5855. Significantly, none of these tolling provisions covers this situation — tolling until the identity of the tortfeasor is discovered.
Plaintiff contends, however, that, notwithstanding these statutes, when the claimant was unaware of any basis for an action, the harsh result of barring any lawsuit because the period of limitations has expired can be avoided by the operation of a court-created discovery rule, sometimes described as a common-law *389 rule, articulated in Johnson v Caldwell, 371 Mich 368, 379; 123 NW2d 785 (1963), superseded by statute as stated in Hawkins v Regional Medical Laboratories, PC, 415 Mich 420, 428 n 2; 329 NW2d 729 (1982). Under a discovery-based analysis, a claim does not accrue until a plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint. Moll v Abbott Laboratories, 444 Mich 1, 16-17; 506 NW2d 816 (1993).[9] Accordingly, here, plaintiff argues that her claims did not accrue until she discovered that Gorton was the killer because, before that time, she could not have known of and alleged each element of the claims.[10] We reject this contention because the statutory scheme is exclusive and thus precludes this common-law practice of tolling accrual based on discovery in cases where none of the statutory tolling provisions apply.
It is axiomatic that the Legislature has the authority to abrogate the common law. Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006). Further, if a statutory provision and the common law conflict, the common law must yield. Pulver v Dundee *390 Cement Co, 445 Mich 68, 75 n 8; 515 NW2d 728 (1994).[11] Accordingly, this Court has observed:
“In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter.” [Hoerstman Gen Contracting, supra at 74, quoting Millross v Plum Hollow Golf Club, 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441] [12]
Here, as we have explained, the relevant sections of the Revised Judicature Act comprehensively establish limitations periods, times of accrual, and tolling for civil cases. MCL 600.5827 explicitly states that a limitations period runs from the time a claim accrues “[ejxcept as otherwise expressly provided.” Accordingly, the statutes “designate specific limitations and exceptions” for tolling based on discovery, as exemplified by MCL 600.5838, 600.5838a, 600.5839, and 600.5855. The scheme also explicitly supersedes the common law as *391 can be seen in the area of medical malpractice, for instance, where this Court’s prestatutory applications of the common-law discovery rule were superseded by MCL 600.5838a, in which the Legislature codified the discovery rule for medical malpractice cases.
Finally, MCL 600.5855 is a good indication that the Legislature intended the scheme to be comprehensive and exclusive. MCL 600.5855 provides for essentially unlimited tolling based on discovery when a claim is fraudulently concealed.[13] If we may simply apply an extrastatutory discovery rule in any case not addressed by the statutory scheme, we will render § 5855 effectively meaningless. For, under a general extrastatutory discovery rule, a plaintiff could toll the limitations period simply by claiming that he reasonably had no knowledge of the tort or the identity of the tortfeasor. He would never need to establish that the claim or tortfeasor had been fraudulently concealed.
Since the Legislature has exercised its power to establish tolling based on discovery under particular circumstances, but has not provided for a general discovery rule that tolls or delays the time of accrual if a plaintiff fails to discover the elements of a cause of action during the limitations period, no such tolling is allowed. Therefore, we conclude that courts may not employ an extrastatutory discovery rule to toll accrual *392 in avoidance of the plain language of MCL 600.5827 and we reject this Court’s contrary conclusion in Chase v Sabin, 445 Mich 190, 191-192; 516 NW2d 60 (1994).[14] Because the statutory scheme here is comprehensive, the Legislature has undertaken the necessary task of balancing plaintiffs’ and defendants’ interests and has allowed for tolling only where it sees fit. This is a power the Legislature has because such a statute of limitations bears a reasonable relationship to the permissible legislative objective[15] of protecting defendants from stale or fraudulent claims. Gladych v New Family Homes, Inc, 468 Mich 594, 600; 664 NW2d 705 (2003). Accordingly, the lower courts erred when they applied *393 an extrastatutory discovery rule to allow plaintiff to bring her claims 16 years after the death of her decedent. When the death occurred, the “wrong upon which the claim is based was done.” Given this holding, we overrule Johnson, supra, and its progeny.
Overruling these cases is the most appropriate course of action because they run directly counter to the legislative scheme. Further, overruling them is not problematic, under Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000), primarily because, by its nature, the discovery rule does not create expectation or reliance interests. In Robinson, we explained that, in deciding whether to overrule wrongly decided cases, we must consider whether “practical real-world dislocations” would result, whether “reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision.” Id. at 464-466. We have already explained that the statutory law, and its changes over time, cause us to question the validity of court-imposed applications of the discovery rule. Most significantly, the nature of the discovery rule contravenes any argument that our decision affects plaintiffs’ reliance interests. A plaintiff does not decide to postpone asserting a claim because he relies on the availability of extrastatutory discovery-based tolling. To the contrary, discovery-based tolling is a retroactive mechanism for relief to be used only when a plaintiff could not anticipate his claims. To the extent reliance interests figure into the analysis, it is the expectations of defendants — including those who, as here, may have had as little indication that a claim existed as did the plaintiff — that are harmed when a plaintiff brings claims long after an event occurred. *394 Defendants must, at some point, be able to safely dispose of business records and other seemingly mundane evidence that they would have no reason to expect could exculpate them in litigation.
Finally, our dissenting colleagues’ explanations for why we should not overrule cases that employ a common-law discovery rule ignore the central reasoning and result of our decision. Justice Kelly states, for instance, that “[t]he common-law discovery rule has become so embedded in the fabric of Michigan limitations law that the state’s jurisprudence will be seriously damaged by destroying it.” Post at 442. But rather than destroy the discovery rule, we recognize that the Legislature has comprehensively established the circumstances under which the rule should be applied and has, in the process, rendered use of the rule more uniform and predictable for plaintiffs, defendants and courts alike.[16]
*395 B. ADDITIONAL RESPONSE TO DISSENTS
First, we reject Justice Kelly’s contention in dissent that the statutory scheme evinces the Legislature’s intent simply to “ratifly] prior decisions of this Court applying the common-law discovery rule,” post at 439, and, therefore, to “implicitly acknowledge!] the applicability of the rule in other types of cases.” Post at 440. She concludes that the Legislature has abrogated our decisions only to “limit[] the discovery rule where it saw fit.” Post at 440. But we see no logical reason to equate the Legislature’s “approval of the rule” — by its codification of some of this Court’s uses of the rule — with the Legislature’s approval of every application of the rule. Justice WEAVER similarly suggests that, because the Legislature paid particular attention only to these circumstances, “it is apparent that the Legislature recognized the continuing existence and viability of the common-law discovery rule and saw fit to limit it in certain instances (§§ 5838 and 5838a), but not in all instances.” Post at 426. Thus, our dissenting colleagues conclude that the Legislature intended merely to limit the rule in some circumstances rather than to establish limited circumstances in which the rule applies.
But the scheme does not, as Justice KELLY asserts, merely “expressly provid[e] that the discovery rule does not apply in professional negligence cases,” thus “impl[ying] that it was to apply in all other contexts” under the maxim of expressio unius est exclusio alterius. Post at 440 n 7. In drawing this conclusion, Justice KELLY *396 focuses on the first sections of MCL 600.5838 and 600.5838a, which establish general limitations on the use of a discovery rule in professional and medical malpractice cases. MCL 600.5838(1) provides, for example, that a professional malpractice claim
accrues at the time [the professional] discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [Emphasis added.]
The second section of this statute, however, explicitly authorizes discovery-based tolling. MCL 600.5838(2) provides that
an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. [Emphasis added.]
In other words, the statute simultaneously authorizes and limits the circumstances under which tolling is appropriate. The same is true of the other statutes that our dissenting colleagues claim merely limit how the rule applies in certain cases; each statute comprehensively authorizes and limits the use of discovery-based tolling in particular circumstances.[17] Because the *397 statutes authorize use of discovery-based tolling, we cannot agree that “[t]he only possible reason the Legislature would have included this language is to take professional negligence claims outside the scope of the common-law discovery rule.” Post at 440-441 n 7. Moreover, the general prohibition on use of the discovery rule in malpractice cases is not “reduced to a redundancy” because it “remove[s] professional negligence claims from the scope of a rule that the Legislature never recognized as existing.” Post at 441 n 7. Rather, in light of this Court’s ongoing use of the discovery rule, particularly in the medical malpractice arena, the Legislature pointedly clarified that a malpractice claim accrues regardless of when it is discovered, consistent with the mandate in MCL 600.5827, while also prescribing a tolling period for commencement of a suit based on discovery.
Most significantly, both dissenting justices’ interpretations of the scheme directly contravene the broad mandate in § 5827 that, “[e]xcept as otherwise expressly provided, the period of limitations runs from the time the claim accrues.” In accord with this mandate, MCL 600.5838, 600.5838a, 600.5839, and 600.5855 pro *398 vide that certain actions may be commenced after a claim is discovered, although the claim accrued in the past and the limitations period has run. Thus, these statutes are clearly expressed exceptions to the general rule in § 5827 that the limitations period begins running when the harm is done. Indeed, expressio unius est exclusio alterius.
MCL 600.5855 also belies the contention that the statutory exceptions merely limit, rather than exclusively authorize, discovery-based tolling under certain circumstances. As we have discussed, MCL 600.5855 provides for essentially unlimited tolling based on discovery when a claim is fraudulently concealed. If we may apply an extrastatutory discovery rule in any case not covered by the expressed exceptions, we will render § 5855 effectively meaningless because a plaintiff may toll the limitations period simply by claiming he reasonably had no knowledge of the tort or the identity of the tortfeasor. He would never need to allege fraudulent concealment.
Justice Weaver’s argument regarding this issue only serves to strengthen our point. She explains that “the fraudulent concealment provision would not be helpful to this plaintiff, nor to other plaintiffs who, in the absence of fraudulent concealment, are unable to pursue a claim because they did not have the information necessary to establish a claim until after the period of limitation had expired.” Post at 424-425. Therefore, she concludes: “Given the distinct need for the common-law discovery rule to assist these innocent plaintiffs, it cannot be said that the continued existence of the discovery rule makes § 5855 superfluous. The two provisions can peacefully co-exist because they serve different purposes.” Post at 425.
*399 To the contrary, the common-law discovery rule fully encompasses the statutory rule allowing tolling based on fraudulent concealment. As described by Justice WEAVER, for instance, the common-law rule applied if the “plaintiff did not have enough information to allege” elements of the claim, through no fault of her own. Post at 414. The discovery of previously unknown information would therefore permit a claim to be saved by the discoveiy rule regardless of whether the information was intentionally obscured from the plaintiff. Thus, Justice Weaver’s interpretation renders the fraudulent concealment statute unnecessary — because the statute’s purpose is subsumed by the broader common-law rule — and ignores the Legislature’s decision to apply the discoveiy rule to one class of undiscovered claims but not to all undiscovered claims. Although she attempts to protect innocent plaintiffs, she fails to acknowledge that the Legislature has balanced its desire to protect such plaintiffs against its desire to protect defendants from having to defend stale claims; the outcome of the balancing differs on the basis of the defendant’s culpability, or lack thereof, for obscuring the claim.
Finally, we also disagree with Justice Kelly’s contention that the lower courts could nonetheless employ a discoveiy rule here because courts commonly did so in 1986 at the time of Eby’s death. She cites MCL 600.5869, which states: “[a]ll actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry.” Post at 447. MCL 600.5827 and the three-year limitations period for wrongful death actions under MCL 600.5805 have existed in their current forms since 1961 and 1978, respectively.[18] Moreover, the related statutes defining and limiting the use of discovery rules *400 under particular circumstances have also existed since 1986.[19] Thus, the relevant statutory law has not changed since 1986. Regardless of whether we agree with Justice KELLY that § 5869 encompasses both statutory and common law, she presents no authority or explanation for how a unique, equitable, inherently backward-looking doctrine such as the discretionary common-law discovery rule can be meaningfully applied as “the law under which the right accrued.” First, a court could not have invoked the discovery rule in 1986 when the “right accrued” because it was unnecessary; the limitations period had not run. Second, § 5869 does not require use of the rule, as Justice KELLY presumes. Post at 448 n 13. Rather, the rule is judge-made law that has been applied on a case-by-case basis. In essence, Justice KELLY’s theory would render our opinion paradoxically meaningless because our holding would not apply to events occurring any time before the day we decide this case; although a claim that accrues tomorrow will be subject to the relevant statutory period and exceptions, a claim that accrued in 1986 may be brought at any time in the future, indefinitely.
Most significantly, Justice KELLY’s focus on MCL 600.5869 obscures the crux and effect of her position; she is asking us to refrain from applying our holding in this case to this case. This position violates the general rule that decisions are retroactive unless “exigent circumstances” justify the “extreme measure” of prospective-only application. Devillers v Auto Club Ins Ass’n, 473 Mich 562, 586; 702 NW2d 539 (2005) (internal quotations omitted). Even when a decision meets *401 the threshold criterion for prospective application because it clearly establishes a new principle of law, we must consider: “(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.” Pohutski v City of Allen Park, 465 Mich 675, 696; 641 NW2d 219 (2002). Here, prospective-only application is inappropriate. First, the very purpose of our holding is to respect limits the Legislature has placed on plaintiffs’ abilities to revive suits relying on events occurring in the distant past; prospective application is therefore directly opposed to our resolve to honor the Legislature’s policy choice. Moreover, as we already explained, the very nature of the discovery rule defies any reliance on its operation. Finally, the administration of justice is not significantly affected because the rights and interests of plaintiffs and defendants are opposed in these matters; although plaintiffs may be denied relief for stale claims, defendants and the judiciary are relieved from having to defend and decide cases based on deteriorated evidence.
For similar reasons, our decision does not “throwD Michigan into topsy-turvy land, where a person’s legal claim dies before it is born.” Post at 449. A discovery rule is only necessary when a plaintiffs claim has accrued and he cannot bring suit within the limitations period. Nothing in our decision cuts off a plaintiffs right to bring suit before the wrong is done; for, until the wrong is done, a claim does not accrue under MCL 600.5827.
C. DUE PROCESS
Plaintiff also asserts that, in construing MCL 600.5827 as we do, we deprive her of due process[20] *402 because she cannot seek damages for her injury. While she does not dispute that in normal circumstances three years, along with the statutorily allowed extension for personal representatives, is reasonable, she asserts that it is unreasonable if she had no way of knowing the identity of the perpetrator of the wrong. That is, she argues that it is unconstitutional for the Legislature to deprive a plaintiff who has an injury — but who, through no fault of his own, has no knowledge of who injured him — of a cause of action.
Plaintiffs reasoning is rooted in the following passage from Price v Hopkin, 13 Mich 318, 324 (1865):
[T]he legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away.... It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law. [Citations omitted.]
Justices KELLY and WEAVER also rely on Price for their contention that our holding violates due process. They misconstrue the holding in Price, however, which does not apply to this case.
Price does not address the discovery rule. Rather, there, the Court was faced with a new legislative enactment that shortened the limitations period during which a plaintiff could bring a suit for ejectment from land. Id. at 322-323. When the act took effect, it applied to all future cases that had not yet been filed. Id. at 323. Accordingly, the ability to bring suit was extinguished for a limited class of plaintiffs who, before the act was passed, had relied on the former limitations period and *403 expected to be able to bring suit in the future. Id. at 323, 324-328. The Price Court concluded that, under the circumstances, due process was violated because a legislature may not “take away an existing right of action, by a statute of limitations which allows no time in which to bring suit after the statute has come into operation.” Id. at 324.
Accordingly, the specific holding in Price has no bearing on this case, in which the limitations period has remained consistent since the time plaintiffs causes of action accrued.[21] A plaintiffs right to due process is not violated because a desired remedy is no longer available; every statute of limitations deprives plaintiffs of a remedy at the moment the period of limitations expires. Indeed, in Price, the newly shortened limitations period was not problematic, in and of itself, as a matter of law. Price, supra at 323-324. Rather, it was only unconstitutional as applied to the plaintiff. Id. at 328. The general rule expressed in Price remains:
The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative *404 judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. [Price, supra at 324.]
Given the Legislature’s unquestioned power, the only question we must ask — as with any due process analysis of a statute that involves neither a suspect classification such as race, alienage, ethnicity or national origin, nor a deprivation of a fundamental right — is whether it “ ‘bears a reasonable relation to a permissible legislative objective.’ ” Phillips v Mirac, Inc, 470 Mich 415, 436; 685 NW2d 174 (2004) (citation omitted). Statutes of limitations “serve the permissible legislative objective of relieving defendants of the burden of defending claims brought after the time so established.” O’Brien v Hazelet & Erdal, 410 Mich 1, 14; 299 NW2d 336 (1980).[22] This Court has also explained that “[i]f the *405 Legislature can entirely abrogate a common-law right, surely it may provide that a particular cause of action can no longer arise unless it accrues within a specified period of time.” Id. at 15.
In light of the permissible legislative objectives of statutes of limitations, O’Brien, supra, the statutes applicable to this case unquestionably further a legitimate legislative aim. The Legislature obviously weighed carefully the competing interests of plaintiffs and defendants when it limited a plaintiffs ability to bring suit under MCL 600.5827 and MCL 600.5805, but protected plaintiffs by affording a limited extension for personal representatives, MCL 600.5852, as well as a discovery-based tolling provision when a defendant fraudulently conceals claims, MCL 600.5855. Given the three-year limitations period and its potential extensions, we cannot say that the Legislature failed to “afford a reasonable time within which suit may be brought.” Price, supra at 325. Accordingly, our holding does not violate plaintiffs due process rights.
D. EQUITABLE TOLLING UNDER BRYANT v OAKPOINTE VILLA NURSING CENTRE, INC
Finally, we decline plaintiffs request to employ a “pinpoint application of equity” to her claims so as to render them timely, on the unique facts of this case. In making this request, plaintiff relies largely on Bryant v Oakpointe Villa Nursing Centre, Inc, 471 Mich 411; 684 NW2d 864 (2004). In Bryant, we addressed the difference between actions sounding in ordinary negligence and those sounding in medical malpractice. We «in- *406 eluded that some of the plaintiffs claims sounded in malpractice, and would have been barred by the malpractice limitations period. Id. at 432. Nonetheless, we allowed the particular plaintiffs malpractice claims to proceed with the negligence claims because
[t]he distinction between actions sounding in medical malpractice and those sounding in ordinary negligence is one that has troubled the bench and bar in Michigan .. . [and the plaintiff’s failure to comply with the applicable statute of limitations is the product of an understandable confusion about the legal nature of her claim, rather them a negligent failure to preserve her rights. [Id. at 432.]
As we clarified in Devillers v Auto Club Ins Ass’n, 473 Mich 562, 590 n 65; 702 NW2d 539 (2005), however, our use of equity in Bryant is limited to those circumstances when the courts themselves have created confusion. In Bryant, the use of equity was appropriate because of “the preexisting jumble of convoluted caselaw through which the plaintiff was forced to navigate.” Devillers, supra at 590 n 65. Here, in contrast, plaintiff has not detrimentally relied on confusing, pre-existing case law. By its very nature, the discovery rule does not lend itself to detrimental reliance; plaintiffs seeking to invoke it do not wait to bring suit because they expect to rely on the rule, but because they claim that external factors prevented them from discovering their claims.
Perhaps most significantly, in Bryant, no controlling statute negated the application of equity; rather, this Court’s caselaw determined whether a claim sounded in medical malpractice or ordinary negligence. Devillers, supra at 590 n 65. To the contrary, in the instant case, the statutory scheme controls limitations periods, accrual, and tolling, just as the no-fault act, specifically MCL 500.3145(1), controlled the outcome in Devillers. Id. As we opined in Devillers, supra at 591, if courts are *407 free to cast aside a plain statute in the name of equity, even in such a tragic case as this, then immeasurable damage will be caused to the separation of powers mandated by our Constitution.[23] Statutes lose their meaning if “an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity.” Id. Significantly, such unrestrained use of equity also undermines consistency and predictability for plaintiffs and defendants alike.
IV CONCLUSION
We hold that the plain language of MCL 600.5827 precludes the use of a broad common-law discovery rule to toll the accrual date of claims to which this statute applies. Here, the wrong was done when Eby was raped and murdered in 1986. MCL 600.5827 was in effect at that time. Accordingly, plaintiffs claims accrued at the time of Eby’s death. The Legislature has evinced its intent that, despite this tragedy, the defendant-appellants may not face the threat of litigation 16 years later, merely because plaintiff alleges she could not reasonably discover the facts underlying their potential negligence until 2002.
We reverse the judgment of the Court of Appeals as well as the circuit court’s order denying the defendant-appellants’ motions for summary disposition under MCR 2.116(C)(7). We remand to the circuit court for further proceedings consistent with this opinion.
Taylor, C.J., and Young and Markman, JJ., concurred with Corrigan, J.

 MCL 600.5805(10).

 MCL 600.5827:
Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

 Boyle v Gen Motors Corp, 468 Mich 226, 231 n 5; 661 NW2d 557 (2003).

 Regarding plaintiffs inability to discover the identity of the killer, she characterized the facts largely as do Justice Kelly and Justice Weaver in dissent. Most significantly, plaintiff claimed that she could not have discovered her premises liability and security claims against Mott and MFO because the police were convinced that Eby had been murdered by an acquaintance whom she allowed into the apartment. This claim distorts the affidavit of David King, the homicide investigator. King described the method of entry as “undetermined” and attested that the police investigated Eby’s acquaintances and other persons “who appeared to be suspicious because of their lifestyle.” It appears unknown why police did not interview Jeffrey Gorton.

 The claim against Jeffrey Gorton is not in dispute.

 475 Mich 906 (2006).

 MCL 600.5805(10) has been renumbered several times since it was enacted as part of the Revised Judicature Act of 1961. 1961 PA 236. The *387 subsection was also amended to explicitly apply to cases alleging wrongful death in 1978. 1978 PA 495. We will refer to the subsection as subsection 10 throughout this opinion for ease of reference.

 See, e.g., Joliet, supra at 40; Garg v Macomb Co Community Mental Health Services, 472 Mich 263, 282; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005); Moll v Abbott Laboratories, 444 Mich 1, 12; 506 NW2d 816 (1993).
Although this Court has consistently applied the statutes together, Justice Kelly now questions whether MCL 600.5827 applies in cases governed by MCL 600.5805(10). By its terms, § 5827 applies to “cases not covered by” MCL 600.5829 to 600.5838, which are not relevant to this case. Accordingly, this Court has consistently applied § 5827 and § 5805(10) together. Joliet, supra at 40; Garg, supra at 282; Moll, supra at 12. Moreover, the statutes are complementary and easily read together. MCL 600.5827 establishes that periods of limitations run “from the time the claim accrues,” which is “the time the wrong upon which the claim was based is done.” MCL 600.5805(10) specifies that personal injury and wrongful death actions accrue at the time of “death or injury.” Because “[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted” under § 5827, the statutes are perfectly consistent. Boyle v Gen Motors Corp, 486 Mich 266, 231 n 5; 661 NW2d 577 (2003).
Significantly, Justice Kelly’s preferred application of MCL 600.5805(10) by itself would not yield a different result. First, the time of death under § 5805(10) would be marked from the same moment as the time the wrong was done, under MCL 600.5827. Thus, not only are the statutes complementary, they also have precisely the same effect when applied separately. Second, even assuming that § 5805(10) should alone govern, we would be hard-pressed to inject a common-law discovery rule into this statute’s plain language, which unambiguously establishes that the “period of limitations is 3 years after the time of the death or injury.” Finally, using a discovery rule to avoid the plain language of § 5805(10) presents the same problem as does applying the rule under § 5827; it ignores the remainder of the statutory scheme, which clearly provides for discovery-based tolling when the Legislature deems it appropriate, as further discussed infra.

 A personal injury claim must allege that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, (3) the breach was the proximate cause of the plaintiffs injuries, and (4) damage. Moll, supra at 16.

 Justice Weaver makes the same argument but also goes one step further. She acknowledges that, under MCL 600.5827, a claim accrues when “ ‘all of the elements of the cause of action have occurred’ ” or when “ ‘all of the elements of an action for personal injury, including the element of damage, are present....’” Post at 413,420, quoting Connelly, supra at 150-151 (emphasis omitted). Justice WEAVER then asserts: “At the time of Dr. Eby’s death, not all the elements of a wrongful death action had ‘occurred.’ ” Post at 414. To the contrary, clearly each element of plaintiffs negligence claims had occurred at the time of Eby’s death; indeed, the crux of each claim is that defendants’ acts preceded and culminated in Ehy’s death.

 Similarly, see Sington v Chrysler Corp, 467 Mich 144, 164; 648 NW2d 624 (2002) (“Codification of common-law rules makes those rules of no consequence if they are inconsistent with the codification.”).

 Justice Weaver’s effort at distinguishing Hoerstman and Millross on the basis of their facts is unavailing. She points out that the statutory scheme at issue here does not contain precisely the same language as the statutes at issue in those cases. Post at 421-424. Hoerstman and Millross do not stand for the proposition that the Legislature is bound to use certain language to convey its intent to abrogate the common law in a given area, however. To the contrary, these cases direct us to examine the scheme as a whole and ask if it constitutes “ ‘comprehensive legislation prescribing] in detail a course of conduct to pursue and the parties and things affected, and designating] specific limitations and exceptions.’ ” Hoerstman Gen Contracting, supra at 74, quoting Millross, supra at 183. As Justice Weaver plainly states: “What is important in conveying [the] intent [to abrogate] is that the legislation be comprehensive.” Post at 423.

 MCL 600.5855 reads:
If a person who is or may be hable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is hable for the claim, although the action would otherwise be barred by the period of limitations.

 This result is also consistent with our recent holding in Boyle, supra at 231-232, in which we declined to employ the discovery rule to the plaintiffs’ fraud claim based, in part, on the plain language of MCL 600.5827, which also governed accrual in that case.
We note that Justice Weaver, in particular, relies on Chase to support her dissenting conclusion that “this case presents the unique situation in which this Court has traditionally applied the discovery rule[.]” Post at 415, citing Stephens v Dixon, 449 Mich 531, 534-536; 536 NW2d 755 (1995), in turn quoting Chase, supra at 196-197. First, the plaintiff in Chase alleged that a surgeon negligently injured him during surgery. Id. at 192. Therefore, the Chase Court’s broad observations regarding appropriate use of the discovery rule are arguably dicta when applied beyond the medical malpractice context. Most significantly, the Chase Court concluded that use of the discovery rule was particularly appropriate because a medical malpractice plaintiff will typically rely on a hospital or physician’s records to prove his claim. Id. at 199-200. As Justice Weaver observes, in contexts such as medical malpractice where the rule is typically applied, “ ‘evidentiary records are rarely diminished by the passage of time’ ” and, therefore, there is less concern for protecting defendants from fading memories and time-flawed evidence. Post at 418, quoting Stephens, supra at 537. Thus, although we reject the Chase Court’s use of a discovery rule when not authorized by statute, we also fail to see how the instant case “presents the unique situation in which this Court has traditionally applied the discovery rule[.]” Post at 415.

 Phillips v Mirac, 470 Mich 415, 436; 685 NW2d 174 (2004).

 Although Justice Kelly criticizes us for disregarding precedent, post at 437, she very recently indicated that she would have been more than willing to overrule precedent she disfavored, e.g. People v Nutt, 469 Mich 565; 677 NW2d 1 (2004). See People v Smith, 478 Mich 292, 322 n 17; 733 NW2d 351 (2007). She also voted to overrule another decision of this Court in Haynes v Neshewat, 477 Mich 29, 39; 729 NW2d 488 (2007), overruling Kassab v Michigan Basic Prop Ins Ass’n, 441 Mich 433; 491 NW2d 545 (1992). Therefore, one is naturally tempted to re-inquire, see Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 223-228; 731 NW2d 41 (2007) (Markman, J., concurring), whether her ongoing criticism truly concerns our attitude toward precedent or merely her attitude toward specific previous decisions of the Court. Justice Kelly points to her positions in recent cases including Liss v Lewiston-Richards, Inc, 478 Mich 203; 732 NW2d 514 (2007), Rohde v Ann Arbor Pub Schools, 479 Mich 336; 737 NW2d 158 (2007), and Michigan Citizens for Water Conservation v Nestlé Waters North America Inc, 479 Mich 280; 737 NW2d 447 (2007). She states: “[E]ven though I did not agree with the precedent in these cases, I said nothing about overruling it.” Post at 438 n 5. Yet, in Liss, although she did not expressly advocate overruling precedent, she asserted that the holding of Smith v Globe Life Ins Co, 460 Mich 446; 597 NW2d 28 (1999), “should be limited strictly to cases *395 involving the insurance industry.” Liss, supra at 217 (Kelly, J., dissenting). In Rohde and Nestlé, although she acknowledged that the cases with which she disagrees are binding precedent, she had no need to advocate for overruling them; she expressly contended that these established cases did not preclude her preferred outcomes in the cases at hand. Rohde, supra at 362 n 5 (Kelly, J., concurring); Nestlé, supra at 323-324 (Kelly, J., dissenting).

 MCL 600.5838a(l) provides that a medical malpractice claim “accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.” MCL 600.5838a(2), in turn, authorizes limited use of the rule, stating: “an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.” MCL 600.5838a(2) and (3) *397 round out the statute’s comprehensive governance of discovery-based tolling in this area. These sections require that actions commenced on the basis of discovery must be brought within six years of the act or omission unless the claim involves permanent loss of or damage to a reproductive organ resulting in the inability to procreate or discovery of the claim was prevented by the fraudulent conduct of the defendant or his agents.
In a similar vein, MCL 600.5839(1) expressly authorizes plaintiffs to bring suit to recover damages arising out of a defective and unsafe condition of an improvement to real property on the basis of when they discover the defect; such a suit must be brought within “1 year after the defect is discovered or should have been discovered.” The statute also lists certain criteria that justify use of the rule and limits its application to claims brought within “10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.” Id.

 1961 PA 236; 1978 PA 495.

 MCL 600.5838 (amended by 1975 PA 142 to address discovery-based tolling); MCL 600.5838a (enacted by 1986 PA 178 with language addressing discovery); MCL 600.5839(1) (amended by 1985 PA 188 to address discovery-based tolling); MCL 600.5855 (enacted by 1961 PA 236).

 US Const, Am XIV; Const 1963, art 1, § 17.

 Justice Weaver argues that, in Chase, supra at 196, this Court cited Price as general support for continued use of the discovery rule. Post at 428-429. The reference to Price in Chase directly precedes a discussion of the general proposition — rooted in MCL 600.5827 and explained in Connelly, supra — that a negligence claim accrues not when a defendant breaches a duty, but when a plaintiff is injured. Any other conclusion “could potentially bar a plaintiffs legitimate cause of action before the plaintiffs injury.” Chase, supra at 196. We agree that this potential effect could “ ‘declare the bread stale before it is baked,’ ” id. at 197 (citation omitted), and raise the due process concerns described in Price. We reject the Chase Court’s interpretation of Price only to the extent Chase may be read, as Justice Weaver suggests, to assert that a plaintiffs due process rights are violated under Price if an otherwise reasonable limitations period expires before a plaintiff is aware of the claim. Such an interpretation of Price would eschew the Price Court’s assertion that it is fully within the power of the Legislature to enact reasonable periods of limitations.

 See, also, Stephens v Dixon, 449 Mich 531, 536; 536 NW2d 755 (1995) (brackets in original):
“While providing equitable relief to plaintiffs otherwise barred by a strict application of the statute of limitations, the discovery rule also threatens legitimate interests of the defendant which the statute protects. While it may be harsh to bar the action of a plaintiff who, through no fault of his own, did not discover his injury until after the running of the statute, it is also unfair ... to compel a defendant to answer a charge arising out of events in the distant past. The discovery rule tends to undermine the sense of security that the statute of limitations was designed to provide, namely, that at some point a person is entitled to put the past behind him and leave it there.” [Olsen, The discovery rule in New Jersey: Unlimited limitation on the statute of limitations, 42 Rutgers L R 205, 211-212 (1989).]
In her dissent, Justice Kelly asserts: “The purpose of a limitations statute is to ‘penalize plaintiffs who have not been industrious in pursuing their claims,’ not to eliminate a valid cause of action when the plaintiff is without fault.” Post at 445-446, quoting Lemmerman v Fealk, 449 Mich 56, 65-66; 534 NW2d 695 (1995). She ignores that limitations periods are also aimed at relieving defendants from the burden of defending stale claims. *405 justice Weaver acknowledges the dual purposes of limitations periods. When she asserts that the equities favor plaintiff in this case, however, Justice Weaver merely distinguishes Stephens, supra, in which the discovery rule was clearly inapplicable because the plaintiff knew of her injury and its cause before the limitations period expired. Post at 413, 418-419.

 Const 1963, art 3, § 2.