*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE DIXON-BROWN and REBECCA
THOMAS,

        Plaintiffs-Appellants,

v

COVENANT CEMETERY SERVICES,

        Defendant-Appellee.

UNPUBLISHED
February 10, 2022

No. 355476
Washtenaw Circuit Court
LC No. 19-001376-CK

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Plaintiffs, Diane Dixon-Brown (Diane) and Rebecca Thomas (Rebecca), appeal as of right the trial court's order granting summary disposition to defendant, Covenant Cemetery Services, and dismissing plaintiffs' complaint. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 2001, Isaac Dixon (Isaac) died of a heroin overdose. Isaac's children, LaJuana Dixon-Trice (LaJuana) and Pierre Dixon (Pierre), were minors at the time of his death. Consequently, Isaac's sisters, plaintiffs in this case, organized and paid for Isaac's interment. After Isaac's death, plaintiffs made a deposit of $1,942[1] to James H. Cole Home for Funerals (the funeral home) to organize Isaac's funeral and burial, and paid $425.14 to Simpson Granite for a headstone. Plaintiffs, as well as Isaac's children, recalled that Isaac was buried at Westlawn West Cemetery in Ypsilanti.[2] At that time, the cemetery was owned and operated by Westlawn Cemetery Association of Detroit (Westlawn). However, a contract between plaintiffs and defendant or the

---

[1] The funeral receipt merely indicated that the total amount of the account was $3,402, a deposit of $1,942 was paid, and the balance due was $1,460. The services paid for were not delineated, and there is no identification of the cemetery.

[2] Plaintiffs submitted affidavits in response to defendant's motion for summary disposition. However, these affidavits contained in the lower court record are not signed or notarized.

funeral home and defendant was not produced. In fact, no contract pertaining to Isaac's burial with the cemetery was ever produced, irrespective of the ownership in 2001. In approximately 2003, the subject cemetery came under new ownership, was renamed Sunset Hills Cemetery, and defendant took over the cemetery's operations.

In August 2016, for the first time since Isaac's burial, LaJuana visited the subject cemetery. She could not locate Isaac's burial site or headstone. LaJuana contacted defendant, who informed her that they had no record of Isaac's burial. Michael Butts, the president of defendant, testified that, at present—and during the time that Isaac was buried and the cemetery was operated by Westlawn—the subject cemetery performs "next in line burials." Burials at the cemetery are performed down a line in chronological order on an at-need basis, and the cemetery's records reflect the same. The cemetery identifies where individuals have been buried by reference to the date that they were buried.

Butts reviewed the records defendant inherited from Westlawn as well as the additional records defendant has kept since, and affirmed defendant's initial conclusion that there was no record of Isaac's burial. Butts opined that Isaac was not actually buried at the subject cemetery, and noted that he did not believe there was a gap in the burial records or that the records were otherwise incomplete. Defendant's staff accounted for all of the burial plots from the time before and after Isaac's purported burial. Although the death certificate, the funeral program, and Isaac's family members[3] identified Westlawn West Cemetery as Isaac's burial place, Butts testified that it was not uncommon for families to change their mind before executing a contract with the cemetery and fail to correct the pertinent documentation.

In November 2016, plaintiffs filed a complaint in the Washtenaw Circuit Court against Westlawn alleging breach of contract, promissory estoppel, and unjust enrichment. Plaintiffs obtained a default judgment in that case. Shortly before plaintiffs obtained that judgment, in September 2017, LaJuana and Pierre filed their own action against Sunset Hills Memorial, Thumb Area Christian Fellowship,[4] Westlawn, and defendant. LaJuana and Pierre settled their claim against defendant for $10,000, and executed a release of claims governing themselves, their family members, successors and assigns, among others.

In December 2019, plaintiffs filed the present suit against defendant alleging breach of contract, promissory estoppel, unjust enrichment, gross negligence, intentional infliction of emotional distress, and fraudulent concealment. Defendant moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), contending, among other things, that plaintiffs' claims were barred by the doctrine of res judicata, barred by the release of claims executed by LaJuana and Pierre, and barred by the relevant statutes of limitations. Without providing its own reasoning, the trial court granted the motion "for the reasons stated in Defendant's Motion for Summary

---

[3] In her deposition, LaJuana testified that she recalled traveling to Westlawn and that it was raining at Isaac's burial. However, it was January 2001, and records of the weather conditions that day were not examined to corroborate her testimony. Additionally, Butts was not questioned whether the cemetery had the equipment and ability to conduct gravesite burials in the winter.

[4] Thumb Area Christian Fellowship is the current owner of the subject cemetery.

Disposition, Brief in Support, and Reply Brief," and dismissed plaintiffs' complaint with prejudice. This appeal followed.

## II. ANALYSIS

As an initial matter, we note that defendant raised a number of issues in its motion for summary disposition that could have provided a basis for the trial court's ruling that plaintiffs simply do not address on appeal. For example, in the trial court, defendant submitted that plaintiffs failed to establish the elements of their claims under MCR 2.116(C)(8) and (C)(10). However, on appeal, plaintiffs do not address the elements of their claims. When an appellant fails to challenge the basis of the trial court's ruling, we need not even consider granting the relief requested. *TT v KL*, 334 Mich App 413, 433; 965 NW2d 101 (2020). Nonetheless, we conclude that the statute of limitations issue is plainly dispositive of plaintiffs' claims, and therefore, we do not address their additional arguments raised on appeal or the other potential grounds for the trial court's decision.

This Court reviews de novo whether a claim is barred by a statute of limitations, as well as the proper interpretation and application of the limitations period. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227-228; 859 NW2d 723 (2014). Motions for summary disposition made on the basis of a statute of limitations are properly brought under MCR 2.116(C)(7). *Nucolovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). When examining whether a motion for summary disposition brought under MCR 2.116(C)(7) was properly decided, the appellate court considers "all documentary evidence and accept[s] the complaint as factually accurate unless affidavits or other documents presented specifically contradict it." *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010).

Michigan applies a six-year period of limitations for breach of contract claims. *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 370-371; 802 NW2d 33 (2011); MCL 600.5807(9). In Michigan, a claim for breach of contract accrues " 'at the time the wrong upon which the claim is based was done regardless of the time when damage results.' " *Scherer v Hellstrom*, 270 Mich App 458, 463; 716 NW2d 307 (2006), quoting MCL 600.5827. Because claims of promissory estoppel and unjust enrichment are "dependent on the existence of contract or contract principles," they are also governed by the same six-year period of limitations. *Huhtala v Travelers Ins Co*, 401 Mich 118, 125-126; 257 NW2d 640 (1977) (quotation marks and citation omitted). See also MCL 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."); MCL 600.5815 ("The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought.").[5]

---

[5] Although *Huhtala* does not specifically address unjust enrichment claims, the principles articulated in *Huhtala* pertaining to promissory estoppel apply equally to unjust enrichment. See *Huhtala*, 401 Mich at 126. Additionally, claims of unjust enrichment are equitable in nature and involve contract liability because a contract is implied in the interests of equity. *Genesee Co Drain Commr v Genesee Co*, 321 Mich App 74, 78; 908 NW2d 313 (2017). Accordingly, a six-year period of limitations also applies to unjust enrichment.

For purposes of breach of contract, promissory estoppel, and unjust enrichment,[6] the claims accrued at the time the wrong upon which the claim is based was done regardless of the time when damage results. It is undisputed that Isaac died and was buried in 2001. It was then that plaintiffs paid the funeral home to organize Isaac's funeral and burial, and purchased a headstone for Isaac's grave. Plaintiffs alleged in their complaint that the headstone was to arrive six to eight weeks after it was purchased in August 2001, but they never confirmed that the delivery occurred. In fact, plaintiffs made no attempt to visit Isaac's grave after the alleged burial until 2016, when they were informed that LaJuana visited the cemetery and could not locate Isaac's grave. Thus, the wrong occurred on January 20, 2001, when defendant purportedly agreed to bury Isaac in the cemetery. The fact that plaintiffs learned that Isaac's burial site could not be located in the cemetery until 2016 does not alter the accrual date for purposes of these claims. The filing of this action in 2019 was outside the period of limitations.[7]

For actions arising out of tort, MCL 600.5805 "is commonly known as the general tort statute of limitations because it is a compilation of the limitations on the general tort remedies." *Miller-Davis Co*, 489 Mich at 363-364. MCL 600.5805(2) provides a three-year period of limitations "after the time of the death or injury for all actions to recover damages for the death of

---

[6] The elements of promissory estoppel include "(1) a promise (2) that the promissory should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008). The elements of unjust enrichment include (1) the receipt of a benefit by the defendant from the plaintiff and (2) it is inequitable from the defendant to retain the benefit. *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991). To address the claims for breach of contract, promissory estoppel, and unjust enrichment, we assume, without deciding, that there was a contractual relationship with or promise rendered by defendant. We note that plaintiff contends that it demonstrated a factual issue regarding defendant's potential ownership interest in the cemetery at the time of Isaac's burial by presenting a page from defendant's website that was since altered by defendant. This webpage merely contained a heading "Sunset Hills & Westlawn" with the date "1999-2003." There was no representation regarding ownership or management and no correlation to the specific date of any of these activities on the webpage. Plaintiff failed to contradict Butts's testimony that defendant took over the management of the cemetery in approximately 2003.

[7] Plaintiffs contend that the trial court improperly applied the three-year limitation period applicable to torts to their contract-based claims as argued in the trial court by defendant. Indeed, defendant suggested below that the three-year limitation period applied to those claims, but clarified on appeal that the three-year period applies because plaintiffs have failed to produce any contract in this case and the gravamen of plaintiffs' complaint arises in tort. Irrespective of the limitation period that the trial court applied to plaintiffs' breach of contract claims, the claims were untimely.

a person or for injury to a person or property."[8]  Plaintiffs do not dispute that, under the facts of this case, the general three-year statutory limitation period applied to their claims of gross negligence and intentional infliction of emotional distress.  See *Doe v Roman Catholic Archbishop*, 264 Mich App 632, 639; 692 NW2d 398 (2004) ("Intentional infliction of emotional distress and negligence are subject to a three-year statute of limitation.").

Previously, a discovery-based analysis was applied to tort actions, and a claim did not accrue until a plaintiff knew or should have known that a cause of action could be alleged in a proper complaint.  *Trentadue v Gorton*, 479 Mich 378, 389; 738 NW2d 664 (2007), citing *Moll v Abbott Laboratories*, 444 Mich 1, 16-17; 506 NW2d 816 (1993).  However, because the Legislature comprehensively established "limitations periods, times of accrual and tolling for civil cases," the statutory scheme explicitly supersedes the common law.  *Trentadue*, 479 Mich at 390.  Accordingly, a claim accrues when the wrong is done regardless of the time when damage results.  *Id*. at 387; *Boyle v GMC*, 468 Mich 226, 231; 661 NW2d 557 (2003).  The wrong is done when the plaintiff is harmed not when the defendant acted.  *Boyle*, 468 Mich at 231 n 5.  Thus, the three-year limitations period for damage claims arising out of these tort claims begins to run from the time the claim accrues, and the claim accrues at the time the wrong is done.  *Henry v Dow Chemical Co*, 501 Mich 965 (2018).[9]

In *Trentadue*, the victim was raped and murdered in November 1986 at her home, a gatehouse leased from the Mott family estate.  In 2002, her murder was solved through deoxyribonucleic acid (DNA) evidence when it was learned that Jeffrey Gorton, an employee of his parent's lawn sprinkler company, had committed the crime.  In 2002, the plaintiff, the personal representative of the victim's estate, filed a complaint alleging negligence against the lawn sprinkler defendants for negligent hiring and monitoring and the Mott estate for negligence in allowing access to the victim's residence and failing to provide adequate security.  With the exception of Gorton, the defendants moved for summary disposition, contending that the claim accrued when the victim was harmed, the third-year period of limitations had expired, and the three-year extension for the appointment of a personal representative did not save the claim because nearly 16 years had passed.  However, the plaintiff alleged that the common-law discovery rule applied to toll the statute of limitations until the identity of the killer was learned.  *Trentadue*, 479 Mich at 382-385.  Our Supreme Court rejected the personal representative's argument, concluding that an extrastatutory discovery rule could not be applied "to allow plaintiff to bring her claims 16 years after the death of [the victim]."  The Court held that when the death occurred, the wrong upon which the claim was based was done.  *Id*. at 392-393.

---

[8] Plaintiffs do not allege that their gross negligence and intentional infliction of emotional distress claims fall under any exception contained in MCL 600.5805 that might provide a different limitation period.

[9] Peremptory orders of the Supreme Court constitute binding precedent when the rationale can be understood even if doing so requires examination of other opinions.  *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018); *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 166; 712 NW2d 731 (2005).

Plaintiffs contend that the claims arose in August 2016, when they first learned that Isaac's remains were missing. However, the tort claims accrued when the wrong upon which the claim is based was done. *Id.* Again, Isaac was purportedly buried in the cemetery in 2001. Plaintiffs purportedly paid the funeral home[10] for the burial at that time, and paid for a headstone shortly thereafter. Plaintiffs never returned to determine whether the headstone arrived to be placed on the grave or whether the grave had otherwise been properly marked. Thus, in 2001, plaintiffs' claims accrued when they were harmed, long before 2016.

To overcome this point, plaintiffs lastly contend that the three-year limitation period for their tort-based claims should be tolled on the basis of fraudulent concealment. Fraudulent concealment can be employed as an exception to a statute of limitations and is governed by MCL 600.5855. *Doe*, 264 Mich App at 642. The statute provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. [MCL 600.5855.]

In order to establish fraudulent concealment, a plaintiff must show an affirmative act or misrepresentation on the defendant's part designed to conceal the existence of the claim or the identity of a potential defendant. *Id.* at 642-643. Plaintiffs must "plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Id.* at 643 (quotation marks and citation omitted).

In their complaint, plaintiffs alleged that defendant represented to them that it did not believe Isaac was buried at its cemetery and this caused plaintiffs to search elsewhere for Isaac's body to their monetary and emotional detriment. Plaintiffs further alleged that Butts lied when he stated to an MLive reporter that he was working to help plaintiffs.[11] The evidence in this case does not support a finding that these statements were untrue in the first instance, let alone designed to conceal the existence of plaintiffs' claims. Butts testified that he *was* attempting to assist Isaac's family, that he truly did not believe that Isaac was buried at the subject cemetery, and he detailed the investigative steps he took to reach that conclusion. Butts reviewed defendant's records,

---

[10] Plaintiffs did not obtain an affidavit from the funeral home addressing what the fee of $3,940 covered in 2001, and the funeral home's relationship to the cemetery at the time, if any.

[11] For the first time on appeal, plaintiffs also suggest that because Butts owns or is active with multiple corporate entities—including defendant, Sunset Hills LLC, and the Thumb Area Christian Fellowship—plaintiffs could not initially determine the proper defendant in this case. Plaintiffs provide no explanation, however, as to how Butts's involvement with multiple corporate entities itself constitutes fraudulent concealment. Moreover, it is telling that LaJuana and Pierre conducted enough due diligence to name most of the above defendants in their 2017 complaint.

including the records defendant received from Westlawn after taking over operations of the cemetery; contacted the funeral home to obtain their records; contacted Sampson Granite to determine what happened with Isaac's headstone; and contacted other cemeteries in the area to determine whether they had any record of Isaac. Plaintiffs have simply failed to allege any affirmative act or misrepresentation on defendant's part that could amount to fraudulent concealment.[12]

Moreover, and importantly, even if plaintiffs could establish fraudulent concealment, their entire fraudulent concealment argument is made in the alternative to their argument that their claims began to accrue in 2019. That is, plaintiffs allege that, if this Court concludes that their claims began to accrue in September 2016, fraudulent concealment allowed them to bring the claims in December 2019. But the fraudulent concealment statute would permit plaintiffs two years from the discovery of their cause of action to file suit. MCL 600.5855. Plaintiffs filed their suit over three years after August 2016. For all of the above reasons, plaintiffs' fraudulent concealment argument is without merit.

Affirmed. Defendant, the prevailing party, may tax costs.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica

---

[12] It is also worth noting that plaintiffs' assertions with respect to fraudulent concealment are plainly contradictory. On the one hand, plaintiffs suggest that they did not bring their suit earlier because defendant indicated it would attempt to help them in locating Isaac's remains. On the other hand, plaintiffs suggest that the idea that defendant was trying to help them at all was news to them when they discovered the MLive article in 2019. Plaintiffs further suggest that they searched elsewhere for Isaac's remains to their monetary and emotional detriment on the basis of defendant's statement to them that defendant did not believe Isaac was buried at the subject-cemetery, but at the same time suggest that they did not search elsewhere in reliance on defendant's offer to help them. Taken together, it is difficult to discern exactly what it is that plaintiffs allege constituted fraudulent concealment, or what, if anything, defendant misrepresented in the first instance.